(No. 15562.—Reversed and remanded.)

REUBEN BRUCE, Trustee, *vs.* JOHN MAXWELL *et al.*— (JONATHAN WHITE, Appellant, *vs.* CHARLES E. FARRELL *et al.* Appellees.)

*Opinion filed February 19, 1924—Rehearing denied April 2, 1924.*

1. DEEDS—*when limitation applies to all lands conveyed and not only to those last described.* Where a deed conveys several different tracts of land, a limitation after the description of the last tract conveyed will not be construed as referring only to that tract but applies to all the lands conveyed, where there is nothing in the language of the deed to so restrict the limitation or to indicate that any different estate was intended to be conveyed in the first tracts described from that conveyed in the last tract.

2. CHARITIES—*gifts to charity are favored.* Courts favor gifts to charity, and will, when posssible, sustain them.

3. SAME—*uncertainty of beneficiaries will not defeat charitable trust.* Under the statute of 43 Elizabeth it is immaterial how uncertain are the beneficiaries of a charitable trust if there is a legal mode of rendering them certain by appointment of a trustee.

4. SAME—*when deed makes a valid gift to charity.* A deed conveying certain described property to the grantee "during her life and afterwards to go to build an old man's home," and appointing a trustee, has all the necessary characteristics of a valid gift to charity.

5. SAME—*statement of the cy pres doctrine.* Where the clear intention of the donor is that the gift shall be devoted to a charitable purpose and the trust cannot be administered in the exact way directed, the donor's purpose will not be allowed to fail but

the exact directions of the donor as to the management of the trust will be regarded as merely directory, and, if necessary to preserve the trust and carry out the leading purpose of the donor, a court may apply it to a similar purpose by different means.

6. SAME—*when the cy pres doctrine will be applied.* Where a grantor makes a conveyance of certain described tracts in different localities, "to go to build an old man's home" after the expiration of a life estate in the grantee, but because of the location of the property and the small amount of the gift it is impossible to build a home for old men, the court should administer the trust *cy pres* by selling the property and applying the proceeds to an existing old men's home in the jurisdiction of the court, which, in the discretion of the chancellor, will most nearly carry out the purpose of the donor.

STONE, J., took no part.

APPEAL from the Circuit Court of Peoria county; the Hon. CHARLES V. MILES, Judge, presiding.

W. A. POTTS, DAN R. SHEEN, and MANSFIELD & COWAN, for appellant.

QUINN & QUINN, (F. J. QUINN, C. V. O'HERN, and E. T. O'CONNOR, of counsel,) for appellees.

GLEN J. CAMERON, (GEORGE W. HUNT, of counsel,) for George Rehfus, successor in trust.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This appeal is prosecuted by Jonathan White from a decree of the circuit court of Peoria county. The case is complicated by the pleadings, but the principal question involved is the construction and effect to be given to a deed executed by John Farrell on September 14, 1912. Farrell at that time was about eighty years old and had lived in Peoria a long time. He had been married four times. One of his wives died and he had been divorced from the others. By one of his wives he had four children, who survived him. At the time Farrell made the deeds hereafter referred

to, he was the owner of several pieces of property in Peoria estimated to be worth about $40,000 and had money in the bank. He was ill and was being cared for by Mary Marratta, who was one of his divorced wives. He died September 27, 1912. On September 14, thirteen days before his death, he executed the deed which is the basis of this lawsuit. At the same time he conveyed to Reuben Bruce $25,000 worth of Peoria real estate and gave Bruce $2100 in money he had on deposit in a bank, but the deed to Bruce for that property and the gift of money are not involved in this suit. The deed which is involved was in the following form:

"*This Indenture Witnesseth,* That the grantor, John Farrell, (unmarried,) of the city of Peoria, in the county of Peoria and State of Illinois, for and in consideration of the sum of one dollar and other valuable considerations in hand paid, conveys and warrants to Mary L. Marratta, of the city of Peoria, county of Peoria and State of Illinois, the following described real estate, to-wit: Part of lot seven (7), in block twenty (20), in the original town (now city) of Peoria, being 29 ft. on Adams st. by 74 ft. on Fayette st. A part of the south end of lot number one (1), in block one hundred and twenty-two (122), in Parishes addition to the city of Peoria. The southwesterly half of lot number eight (8), in block numbered twenty-three (23), in the original town (now city) of Peoria. The N. E. ½ of lot number eleven (11), in block number one hundred and twenty-five (125), in Birket's addition to the city of Peoria. During her life and afterwards to go to build an old man's home. Reuben Bruce, trustee. The grantor reserves a life estate in all the above property. The grantee to collect and pay over to the grantor any all rents during his lifetime, in full, situated in the county of Peoria in the State of ......, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this State.

"Dated this fourteenth day of September, A. D. 1912.

Witnessed by J. Wesley Fish."  ·        JOHN FARRELL (Seal).

Mary Marratta controlled the property described in the deed after Farrell's death until she died, testate, February 17, 1917. She left an only child, John Maxwell, surviving her, who was made sole devisee of all her property. He conveyed by quit-claim deed, on August 23, 1917, all in-

terest he owned in the property described in the deed from
Farrell to his mother to Dan R. Sheen, and he made a quit-
claim deed for the same property on November 16, 1917,
to Jonathan White. Some time in 1913 Farrell's children
filed a bill to set aside the deed to Mary Marratta for lack
of mental capacity in the grantor. That suit appears to
have pended without having been brought to trial until the
bill in this case was filed, and the two cases were consoli-
dated. No proof was offered to support the bill filed by
Farrell's heirs, and the cause was heard and determined on
issues made under the bill filed by Reuben Bruce, August
31, 1917. That bill alleged the execution of the deed above
set out, the death of the grantor and Mary Marratta, and
a copy of her will. The bill then alleges complainant has
no knowledge of the existence of any beneficiary such as
is named in the deed, although he is named as trustee; that
he does not know what his rights and powers are as trus-
tee; that he does not know how to utilize the property for
an old men's home, for the reason there is no endowment
to carry out the purposes of such home; that he does not
know whether he can sell the property to obtain funds to
support inmates of a home, or mortgage it, or a part of it,
for that purpose, or how to procure means to establish a
home for old men or whom to accept as beneficiaries. He
prays that the court construe the deed and instruct com-
plainant what his duties are in the premises. The heirs of
John Farrell, and John Maxwell, the only child and sole
devisee of Mary Marratta, were made defendants as claim-
ing some interest in the property. An amendment to the
bill in August, 1918, alleged Maxwell had conveyed his in-
terest in the property to Sheen by quit-claim deed, and that
Sheen had quit-claimed to Jonathan White, appellant here,
who claimed title through the conveyance to Mary Mar-
ratta, who the amended bill alleged took only a life estate
under the deed to her from Farrell and at her death the
title in fee vested in complainant as trustee. The Farrell

heirs set up title in themselves to the property on the ground that the deed from their father to Mary Marratta conveyed to her a life estate in all the property described in the deed, and they denied the remainder ever vested in complainant as trustee because of uncertainty and indefiniteness of the deed, and alleged at the death of Mary Marratta they were seized of the fee and right to possession and that White has no title to or interest in the property. They also filed a cross-bill setting up their claim of title. While the bill was pending Reuben Bruce died, and before the decree was entered Helen Bruce, administratrix of his estate, filed a cross-bill asking a decree against the Farrell heirs to pay an allowed claim in favor of the estate of Reuben Bruce against the estate of John Farrell, out of money they were alleged to have received as heirs of Farrell. The court sustained a demurrer to the cross-bill and dismissed it. The Farrell heirs in an amended cross-bill alleged there was a mistake in the description in the deed from Farrell to Mary Marratta of the property in lot 7, block 20, original town (now city) of Peoria, in that the deed described 29 feet fronting on Adams street whereas the grantor only owned 19 feet of said lot fronting on said street and cross-complainants had for a long time owned the other ten feet described in the deed, which was part of other property owned by cross-complainants, and they prayed that the deed be corrected and reformed.

We have endeavored to set out enough of the pleadings to show what the questions involved for decision were and how they arose. The main controversy was the construction and effect which should be given the deed from John Farrell to Mary Marratta. The original complainant, Reuben Bruce, and the Farrell heirs, contended that the deed conveyed to the grantee only a life estate in all the property described in it, while appellant, White, contended it conveyed a fee in the three first tracts described and a life estate only in the fourth tract described. Both the Farrell

heirs and White contended that the deed did not create a charitable trust as to any of the property and that it can not be sustained and administered under the directions of a court.

The cause was referred to the master in chancery, who heard the evidence and reported the deed from John Farrell conveyed to the grantee only a life estate in all the property described; that the deed vested in Reuben Bruce, trustee, all the title and interest in the property not reserved to the grantor or conveyed to Mary Marratta; that the purpose and intent of the charity the grantor intended to promote, as appeared from the deed, was a valid trust for charity; that the court had jurisdiction to advise the trustee and supervise and direct its administration, and if it appeared the trust could not be carried out in the manner contemplated by the grantor, the court should cause the trust to be carried out, as nearly as may be, in accordance with the charitable intention of the grantor. Over exceptions of appellant the court adopted that construction of the deed and the trust and decreed accordingly. It will therefore be seen that the substantial merits of the case depend on the title conveyed to Mary Marratta and the validity of the attempt to create a trust in all or some of the property described.

A photographic copy of the deed is contained in the abstract. The deed is a printed statutory-form warranty deed and contains a blank space of several dotted lines for the description of the property. The first tract described occupies all of the first three dotted lines except about one and a half inches at the right of the last word of the description of that tract, and that space is filled out with a horizontal line about an inch long. The same thing is true of the space occupied in describing the second tract. About a half-inch of blank space on the dotted line remains after the description of the third tract. The description of the fourth tract ends on the dotted line two or more inches inside

the margin of the deed, but immediately following the last word of the description, and on the same line, begin the words, "During her life and afterwards to go to build an old man's home. Reuben Bruce, trustee."

Appellant has made an elaborate argument to show that the words "during her life" only qualify the conveyance of the last tract described. We do not agree with that contention. There is nothing in the language of the deed to so restrict said words or to indicate that any different estate was intended to be conveyed to the grantee in the first three tracts described from that conveyed in the fourth tract described.

A more serious question is whether the trust created was a gift to charity of such character that it may be executed by directions of a court of chancery. Courts favor gifts to charity, and will, when possible, sustain them. Where the statute of 43 Elizabeth is part of the law, the disposition of courts has been to permit a great degree of uncertainty as to the beneficiaries. It is immaterial how uncertain the beneficiaries of a charitable trust are, if there is a legal mode of rendering them certain by means of a trustee appointed. Indeed, "it is an essential feature of public or charitable trusts that the beneficiaries are uncertain,— a class of persons described in some general language, often fluctuating, changing in their individual numbers and partaking of a *quasi* public character." (*Hunt* v. *Fowler*, 121 Ill. 269.) In *Heuser* v. *Harris*, 42 Ill. 425, there was a direction in the will of the testator that the executor sell lands at public sale, one-half of the proceeds to go to the school district in which the farm was located and the income from the other half to the poor of Madison county. The court sustained the gifts as charitable trusts, and in an elaborate opinion discussed the subject of gifts to charity and the conditions under which a court of chancery would administer them. The subject of the gift here involved was certain—the property described in the deed. The purpose

for which the gift was made was certain—"to build an old man's home." The individual beneficiaries were uncertain, but the class of persons for whose benefit it was to be applied was definitely described and a trustee was appointed to execute the trust. In *Welch* v. *Caldwell,* 226 Ill. 488, the court said: "In England, where there was a gift to charity generally but no definite beneficiaries were named or specific charitable purposes enumerated, the donation was controlled and carried into effect under the prerogative power of the king, but the courts of this State do not assume to exercise that prerogative power. If, however, there is sufficient certainty to enable the court, in the exercise of its ordinary chancery powers, to carry out the donor's charitable intent it will not be allowed to fail. If a trustee is required, in the administration of the charity, to fix the beneficiaries, and no trustee is appointed and no power given to the court to appoint one, the gift will be so imperfect that it cannot be administered, but if a trustee is appointed or the appointment is referred to the court the trust will be valid. (*Hunt* v. *Fowler, supra.*) If the subject and object of the trust are definitely declared the trust will not be allowed to fail for want of a trustee." We have no doubt that under the cases above cited and *Trafton* v. *Black,* 187 Ill. 36, *Guilfoil* v. *Arthur,* 158 id. 600, *Hoeffer* v. *Clogan,* 171 id. 462, *Jansen* v. *Godair,* 292 id. 364, *Hart* v. *Taylor,* 301 id. 344, and many other cases to be found in our Reports, the gift made by the deed has all the necessary characteristics of a valid gift to charity.

But it is insisted that the application of the property to the purpose directed by the donor is impossible, for the property directed to be devoted to the building of an old men's home consists of four tracts, widely separated, and are of the aggregate value of only about $10,000. It is apparent that it is practically an impossibility to carry out the purpose of the trust according to the donor's directions to build an old men's home. The circuit court decreed that

the donation was a charitable gift and that the court had jurisdiction to administer it and appoint a new trustee. George W. Rehfus was appointed successor in trust in place of Reuben Bruce, deceased, and vested with title to the property and the income therefrom. He was ordered to take possession of the property and to carry out the terms of the trust imposed by the deed, and to apply to the court, from time to time, for directions or instructions in the administration of the trust. He was ordered to pay all costs of the litigation out of the trust fund, and the cause was referred to the master to take an account between the trustee and the appellant, who was in possession, collecting the rents; also to determine the amount due for commissions earned or services rendered by Bruce in his lifetime, as trustee, and to fix the fees due the solicitors who represented the original complainant in this case. It will be seen the only directions given the trustee were to carry out the terms of the trust imposed by the deed, to apply to the court for further directions and to pay all costs of the litigation, including the fees of the solicitors who filed the original bill, in which it was alleged complainant did not know what his duties and powers were as trustee or what to do with the property, and asked the court to construe the deed and instruct the trustee what his duties were in the premises. The court undoubtedly knew the trustee could not "carry out the terms of the trust imposed by the deed" with property worth only $10,000 and pay out of the property the costs and claims the court held the property was liable for. For these reasons the trust imposed by the deed was as impossible of execution for that purpose as if it had been an invalid gift. It was as idle to direct the trustee to carry out the trust imposed by the deed as if the property had been a vacant lot worth only a few hundred dollars. If it was a question whether the trust should be carried out as directed by the donor, or fail, it is evident from the character and value of the property

that it would have to fail. If that is true, then, unless the gift can be administered *cy pres,* it is void.

The *cy pres* rule was an English rule and formerly resorted to as an exercise of the prerogative power of the crown but is applied in this country as an exercise of judicial power. The basis of the rule is, that where the clear intention of the donor was that the gift should be devoted to a charitable purpose and the trust cannot be administered in the exact way directed, the donor's purpose will not be allowed to fail but the exact directions of the donor as to management of the trust may be regarded as merely directory, and, if necessary to preserve the trust and carry out the leading purpose of the donor under the *cy pres* doctrine, a court may apply it to a similar purpose by different means. That doctrine only applies when there is a valid gift to charity and it is clear the exact directions of the donor cannot be carried into effect. (5 R. C. L. 366, 367.) It is certain John Farrell intended the gift should be devoted to a charitable use,—to build an old men's home; and it is also clear, for the reason stated, it cannot be administered in the exact manner he directed. The donor did not intend the property to go to his heirs, but unless the court can *cy pres* carry out his intention by devoting it to a similar purpose the gift must fail and the property go to his heirs, contrary to his intention.

The proof shows there are three old men's homes in Peoria, and some or all of them were in existence when the deed was made, and it is said if Farrell had intended the property, or the income from it, to go to one of them or be divided among them he would have said so instead of directing that it be used to build an old men's home. At the time the deed was made the grantor was eighty years old. He was ill and died two weeks later. It is true, the proof shows he had never been charitably inclined and was estranged from his children, who were all adults. We are warranted in concluding his desire was that after the life

estate conveyed had terminated, the property should be used in providing a home for old men who were in need of a home. The words used in the deed were to build a home, but clearly signify his intention was to devote the property to the purpose of assisting and relieving old men. We are of opinion the court had the power *cy pres* to administer the trust by devoting it to a similar purpose in a way which would be of practical benefit to the objects of the charity, and should not have decreed that the trustee carry out the trust according to the terms imposed by the deed. We are not in as good a position as the chancellor to determine the precise manner in which the trust should be administered *cy pres,* but it seems apparent the only practicable thing to do to carry out the purpose and intention of Farrell and prevent the property from being eaten up in attorneys' fees, costs and expenses, is to sell it and apply the proceeds to the aid of the conduct and maintenance of an existing old men's home within the jurisdiction of the court. It will be left to the chancellor to determine to what existing old men's home it should be applied.

Without discussion of the minor complaints of the decree, we do not think the court erred in reforming the description in the deed for 29 feet of lot 7, block 20, and making it read 19 feet, nor did the court err in sustaining the demurrer to the cross-bill of Helen Bruce, as it was not germane.

The decree is reversed and the cause remanded for further proceedings and a decree not inconsistent with the views expressed in this opinion.

*Reversed and remanded, with directions.*

Mr. JUSTICE STONE took no part in this decision.