(No. 25405.—

THE BOARD OF EDUCATION OF THE CITY OF ROCKFORD, Appellant, *vs.* THE CITY OF ROCKFORD *et al.* Appellees.

*Opinion filed December 15, 1939.*

CHARLES H. DAVIS, for appellant.

LATHROP, LATHROP, BROWN & LATHROP, (ROY H. BROWN, and DAVID CONNOLLY, of counsel,) for appellees.

Mr. CHIEF JUSTICE WILSON delivered the opinion of the court:

This case presents the question of whether the *cy pres* doctrine is applicable to the factual situation narrated in plaintiff's amended complaint. Plaintiff is the board of education in and for the school district of the city of Rockford,

otherwise known as school district No. 205 of Winnebago county. Defendants are the city of Rockford, the heirs-at-law and devisees of Selden M. Church and Thomas D. Robertson and their respective wives, the Booker Washington Community Association and its directors, as representatives of a class consisting of the members of the association. Motions to dismiss interposed by the association and its officers and, also, by some of the heirs and devisees were allowed, the plaintiff elected to abide by its pleading, and a decree of the circuit court of Winnebago county dismissed the complaint, as amended, for the want of equity. Plaintiff prosecutes this appeal.

The amended complaint alleges that the plaintiff seeks, among other things, to carry out the intention of the creators of a trust under the *cy pres* doctrine. Pertinent facts charged, and admitted to be true by the motions to dismiss, are as follows: June 20, 1855, the common council of Rockford passed "An ordinance to divide the city of Rockford into school districts, and to establish and regulate schools therein." This ordinance divided the city into two school districts, namely, district No. 1, comprising the portion of Rockford lying on the east side of Rock river, and district No. 2, the part of the city located on the west side of the river. The ordinance commanded the city to establish at least one common school in each school district for the free instruction of resident children over the age of five years attending the school. To accomplish this purpose, the ordinance provided, further, that the council should determine when it was necessary to build a school house in either district and appoint a freeholder residing in the district, to be denominated school agent, empowered to select and purchase suitable grounds and to make the requisite contracts for the erection of the structure, such contracts being subject to approval by the council. The concluding provision of the ordinance, paragraph 16, ordained that "The land, buildings, furniture and fixtures, purchased,

erected or constructed under any of the provisions of this ordinance shall be conveyed to and become vested in this city for the use and in trust for the respective school districts in which the same shall be located." On June 23, 1855, purusuant to the authority of the ordinance of June 20, the council, resolving that it was necessary, ordered that one school house costing not less than seven thousand dollars be erected in each school district as soon as practicable. By a resolution adopted on June 30, the council instructed the school agent in district No. 2 to ascertain and report the best terms upon which an appropriate site could be obtained for the purpose of erecting a school house in the fifth ward. December 31, 1855, the council, by another resolution, authorized the school agent to procure plans and specifications for school houses in the district. Subsequently, on February 26, 1856, the council accepted the school agent's report describing proposals for building school houses in district No. 2 and directed him to make a contract with A. F. Warring for two schools. March 25, 1856, the council instructed the school agent to close the contract as soon as feasible, to purchase two lots owned by one Dr. Gantt "and also to purchase the three lots heretofore negotiated for with T. D. Robertson and contract for building a school house on the last mentioned lot at a cost not exceeding one thousand dollars ($1,000.00)." Thereafter, on April 12, 1856, Robertson and Church, and their wives, by warranty deed, conveyed the three lots to the city "for the use of the inhabitants of School District No. Two in said city" and the council, on April 28, 1856, directed the city clerk to cause the deed to be recorded. This he did on May 1, 1856. The city went into possession of the property conveyed by Church and Robertson and, on July 28, 1856, the council passed another resolution authorizing William Peters to erect a school house in South Rockford, ward five, according to plans submitted, at a cost not in excess of one thousand dollars. The school erected on

the premises in 1856, in ward five, was designated "Kent School" and still bears the name.

A special charter, it appears, was granted to the city of Rockford in 1865, and school district No. 205 was established conformably to its terms. From 1856 to 1865 schools were conducted by the city in conformity with the ordinance of 1855, and from 1865 to 1906 in accordance with the special charter. In 1906, a board of education was appointed by the mayor of Rockford, subject to the approval of the city council, as provided by the applicable statute (Ill. Rev. Stat. 1939, chap. 122, par. 306, p. 2939) and has since been in continuous existence, performing the duties essential to the maintenance of an efficient system of free city schools.

February 19, 1912, the city conveyed three parcels of land by particular description, and all other school property including the tract conveyed to it in 1856, by general description, to the plaintiff board of education. Kent School was then in existence and was being used exclusively for school purposes. In 1920, the board, having purchased two lots contiguous to the lots purchased in 1856, built an addition to Kent School. The school, as enlarged, was used exclusively for school purposes until January 31, 1936, when classes were discontinued by virtue of a resolution passed by the board of education.

Subsequently, on September 14, 1936, plaintiff permitted the defendant the Booker Washington Community Association to occupy the school building as a tenant at will rent-free. This defendant is a voluntary association, organized, as disclosed by its charter, "to promote civic, cultural, recreational interest and activities, and to serve all ages and both sexes and to direct character building and community betterment programs among the colored citizens of Rockford and its suburbs." The complaint charges that none of the association's activities are under plaintiff's control or supervision; that the persons enjoying the association's occupancy of the premises reside on

both the east and west sides of Rock river and, also, in the environs; that these colored residents have come to Rockford since 1865 and, hence, subsequent to the date of the deed conveying the premises in controversy to the city, and that approximately forty-five thousand persons of all races reside in the territory formerly referred to as school district No. 2, whereas less than two hundred individuals, relatively few in comparison with the total number of inhabitants of the territory, are now in possession of the property.

Further allegations are that the school agent of the council was authorized by the ordinance of 1855 to obtain the lots for school purposes; that the original grantors intended the premises to be so used by the inhabitants of a part of the city; that the Kent School building has become obsolete; that the area where it stands is now served by a new and modern school known as Barbour School; that since 1856 when Kent School was constructed the population center about the school has shifted, and that, in 1936, the plaintiff decided to abandon use of the structure as a school, believing the best interests of the school district demanded that its physical use for school purposes be discontinued. An expenditure of twelve thousand dollars, it is asserted, would be required to render the building suitable for the operation of a school. Particular changes, among others, which would be necessitated are set forth, namely, a new heating and ventilating system, plumbing equipment, decoration of the exterior and interior of the building, modernization of the lighting system to meet the recommendations of the State, reconditioning of the exterior drainage, and the purchase of new desks. By reason of the conditions recounted, plaintiff alleges that the use of the school for school purposes is not only impracticable but is neither economical nor advisable.

The relief sought was a decree (1) altering, *cy pres,* the use of the three lots and permitting and directing either the plaintiff board or the city, as trustee, to sell the prem-

ises, apply the proceeds of the sale to the building fund of the board of education, and use such proceeds for school building purposes on the west side of Rock river in the territory initially designated school district No. 2, or, in the alternative, altering, *cy pres,* the use of the property, authorizing a sale and prescribing the method, *cy pres,* whereby the proceeds will be used for school purposes in the territory described, and (2) adjudging whether (a) the city, by the deed of February 19, 1912, conveyed title in fee to the plaintiff; (b) the city thereby refused to act as trustee and designated plaintiff to hold title to the three lots in trust for the use of the inhabitants of school district No. 2 for school purposes, and (c) the city or the plaintiff now holds title to the lots in trust.

By their motions to dismiss defendants averred that the clear intent of the grantors in the deed was that the property should be used for the inhabitants of school district No. 2, and that the complaint lacks allegations aptly showing the premises are not or cannot be thus used; that plaintiff, under its deed from the city, did not acquire any greater or broader title than the city had, namely, a title impressed with an express trust which has heretofore been administered and can still be executed in accordance with the intent disclosed in the trust instrument; that the trust has not failed because the Booker Washington Community Association, with plaintiff's consent, is using the premises as a social and educational center; that the complaint fails to allege facts or circumstances for the application of the *cy pres* doctrine of the law of trusts, and that the deed, neither expressly nor by implication, grants power to sell the premises. The motion to dismiss filed by the heirs and devisees of the original grantors averred, in addition, that in the event the premises should not be used for the inhabitants of the territory formerly comprising school district No. 2, the property, by virtue of a resulting or constructive trust, would belong

to them. Upon allowance of the motions to dismiss, the decree dismissing the suit was entered.

Plaintiff charges, and the defendants admit, the creation and existence of a general charitable trust by virtue of the deed from Church and Robertson on April 12, 1856, conveying three lots to the city for the use of the inhabitants of school district No. 2. A trust to establish or maintain a school or other educational institution or otherwise to promote education is charitable although the beneficiaries are limited to the inhabitants of a particular place, whether a country, State, city, town or parish, provided the class is not so small that the purpose is of no benefit to the community. (2 Restatement of Trusts, sec. 370 (j).) Admitting that the grantors must have known that the immediate use was to be that of a school, defendants maintain, nevertheless, that the language expressing the trust, "for the use of the inhabitants of school district No. Two in said city of Rockford," manifested an intent to devote the property described in their deed to the perpetual general use and benefit of the residents of the particular part of the city where the property is located. The land was conveyed to the city conformably to the ordinance of June 20, 1855, establishing and regulating schools in the two school districts of the city of Rockford and pursuant to the successive resolutions of the city council. The deed to the city must be considered in the light of the ordinance of 1855 and, particularly, paragraph 16, which conclusively demonstrates that any property purchased under the provisions of the ordinance should be conveyed to and become vested in the city for the use, in trust, of the respective school districts in which the land was located. Obediently to the command of the council, the school agent took the necessary steps to effect the conveyance of the lots owned by Church and Robertson to the city. By the express provisions of the ordinance, the relevant resolutions of the

council and the terms of the deed, itself, the city acquired and thereafter held title to the land on which Kent School stands, for the use of the inhabitants of a particular place, namely, school district No. 2. If it be conceded, as defendants insist, that the language is not sufficiently clear to show that property dedicated to the use of inhabitants of school district No. 2 is for school purposes, then such objective may be shown by extrinsic evidence. In construing an ambiguous deed, the intention of the parties may be ascertained by considering the surrounding circumstances existing at the time of its execution, and the deed given such a construction as the parties themselves intended, if consistent with the language employed. (*Miller* v. *Mowers*, 227 Ill. 392.) The extrinsic facts alleged by plaintiff explain and remove a latent ambiguity in the deed by applying the deed to the subject matter and do not purport to enlarge or vary the general language of the grant. A latent ambiguity occurs where a writing appears on its face clear and unambiguous, but which, in fact, as shown by extrinsic evidence, is uncertain in meaning, or where a description apparently clear and unambiguous is shown to fit different property or different things. In such cases, the ambiguity being raised by extrinsic evidence, the same kind of evidence may be admitted to explain it or to identify the person or thing referred to in the writing. (*Higinbotham* v. *Blair*, 308 Ill. 568; *Brenneman* v. *Dillon*, 296 id. 140.) The deed in question was subject to the provisions of the ordinance of 1855, the parties to the deed were presumed to know the law, and a presumption obtains that the conveyance was made according to the applicable ordinance. Unless the deed complied with the ordinance it would have been void. To sustain defendants' argument the ordinance of 1855 would not only have to be disregarded but treated as a nullity. Manifestly, the deed was not executed in contravention of the ordinance of 1855, a positive law so far as the city was concerned. By appropriate allegations,

the amended complaint shows that the conveyance was not merely for the general use of the inhabitants of school district No. 2 but was, on the other hand, a conveyance solely for school purposes. Indeed, for fourscore years, the parties have themselves so construed the deed.

We next consider whether the property is being presently used for school purposes and, if not, whether plaintiff may invoke the *cy pres* doctrine. Courts of equity have original and inherent jurisdiction to recognize, execute and control trusts and trust funds. (*Maguire* v. *City of Macomb,* 293 Ill. 441; *Hopkins* v. *Granger,* 52 id. 504.) Where the benevolent intention of the creators of a charitable trust cannot be carried out as made but may be executed in substance, a court of equity may execute the trust *cy pres.* (*Bruce* v. *Maxwell,* 311 Ill. 479; *People* v. *Braucher,* 258 id. 604; *Mason* v. *Bloomington Library Ass'n,* 237 id. 442.) The Restatement of the Law of Trusts (vol. 2, sec. 399) defines the doctrine of *cy pres* with admirable clarity, as follows: "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." *Trustees of Rush Medical College* v. *University of Chicago,* 312 Ill. 109, *Bruce* v. *Maxwell, supra, People* v. *Braucher, supra, Mason* v. *Bloomington Library Ass'n, supra,* and *Board of Supervisors* v. *Winnebago Swamp Drainage Co.* 52 Ill. 454, support the quoted definition. One significant limitation of the rule is that the basic purpose of the gift cannot be changed. It has been aptly stated that property devised to education, for example, cannot be judicially diverted to religion, the relief of the poor or sick, or to general charity, or *vice versa.* (14

C. J. S. (Charities) sec. 52, p. 517.) *People* v. *Braucher, supra, Heuser* v. *Harris,* 42 Ill. 425, and *Gilman* v. *Hamilton,* 16 id. 225, are to the same effect.

From the complaint it appears that the premises in controversy, after eighty years' exclusive use for the advancement of education, are no longer adapted to school purposes and, since January, 1936, have not been so employed. In particular, the complaint charges that it is presently impracticable to use Kent School for conducting classes therein. It is not essential that the conduct of classes be impossible. Resort to the shelter of the *cy pres* rule is available if use in the designated manner is no longer feasible. Not only does the complaint disclose that shifting population, obsolescence, and other factors render use of Kent School in its present condition of disrepair no longer practicable for the holding of classes but also that such use would be definitely hazardous. Continued literal compliance with the terms of the trust, although not impossible, would nevertheless defeat or substantially impair the attainment of the object of the trust. The general charitable intention of the grantors that the premises be used for school purposes may be satisfied, however, by pursuing the plan suggested by plaintiff, or some like plan. In order to comply with the intent of the grantors the chancellor, in the exercise of supervisory jurisdiction over charitable trusts to protect them and enforce their execution, is empowered to substitute another method, *cy pres,* or "as near to" the one designated in the deed of April 12, 1856, as may be practicable, for the continued use of the premises, or the proceeds derived from the sale thereof, for school purposes for the benefit of the inhabitants of school district No. 2.

Defendants argue, however, that recourse to the *cy pres* rule is unnecessary, asserting that the trust has not failed because the defendant community association is utilizing the property as a social and educational center and that this

use is a charitable use. Plaintiff, conceding that the association's use of Kent School is for a charitable end, properly points out that the decisive question is not whether the current use is for charitable purposes but is, instead, whether the property is presently used for school purposes consistent with the reasonable contemplation of the creators of the trust. The expressed object of the association does not include educational purposes. Laudable as its social, civic and recreational activities may be, the pleadings show conclusively that such enterprises do not constitute a use of the property for the purposes for which conveyed in 1856. Moreover, the premises were conveyed to the city for the particular use of the residents of school district No. 2. Those actually using the premises at the time the complaint was filed, according to plaintiff's pleading, reside not only on both sides of Rock river but also in the suburbs of Rockford. In short, the present use is not solely by residents of school district No. 2 for school or any other purpose, but by a small minority of a certain class of inhabitants.

It is true, as both plaintiff and defendants admit, that plaintiff lacks power, express or implied, to sell the property. A court of equity, however, exercising control of the trust is not so restricted. The mere fact that the deed from Church and Robertson contained no power of sale is immaterial. The jurisdiction of courts of equity over charitable trusts necessarily includes the power to sell the trust property, if necessary to carry out the intention of the settlor. Where the site of the charity is or becomes impracticable, the court may direct or permit the trustees to sell the land and devote the proceeds to the erection and maintenance of the institution on other land, even though the settlor specifically directed that the land should not be sold and the institution not be maintained in any other place. (2 Retatement of Trusts, secs. 399 (1), 381; *Bruce* v.

*Maxwell, supra.*)   Here, the circuit court has power to order a sale of the property if deemed necessary to the execution and protection of the trust.

From the pleadings it appears that the city, in 1912, by deed purported to convey the lots to the plaintiff, referring to them by general description only.   The circuit court, having jurisdiction of the subject matter by reason of the trust and of the parties, was empowered to determine all questions arising in the progress of the case and to do complete justice.   It follows that the court had jurisdiction to construe the legal effect of the conveyance and, specifically, to adjudicate the character of title transferred to plaintiff by the deed.   Similarly, the court, in the exercise of its inherent jurisdiction, was empowered to construe the trust and decide whether the conveyance was tantamount to a refusal by the city to act as trustee and, in effect, designated plaintiff as successor trustee of the property for the use of the inhabitants of school district No. 2, and, finally, to determine whether plaintiff or the city now holds title to the lots in trust for school purposes.

The contention of the heirs and devisees of Church and Robertson that the trust having failed, the land reverts to them, is not well taken.   The deed contains no clause or condition even remotely pertaining to reverter.   Nor is there any clause or condition in the deed which can be construed as a condition subsequent.   Where the deed does not state that the premises are conveyed upon condition and there is no provision for reentry by the grantor, the right of reentry does not exist and there is no reverter in the grantor or his heirs.   *Rockford. Trust Co.* v. *Moon,* 370 Ill. 250; *Northwestern University* v. *Wesley Memorial Hospital,* 290 id. 205; *King* v. *Lee,* 282 id. 530.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to overrule defendants' motions to dismiss the complaint and to proceed in conformity with the views expressed in this opinion.

*Reversed and remanded, with directions.*