The Catholic Bishop of Chicago, a Corporation sole, and Rev. Martin D. McNamara, Catholic Bishop of Joliet in Illinois, Plaintiffs-Appellees, v. Latham Castle, Attorney General for the State of Illinois, et al., Defendants-Appellants.

Loretta Shields Murr, et al., Counterclaimants, v. The Catholic Bishop of Chicago, a Corporation sole, et al., Defendants re Counterclaim.

Gen. No. 11,011.

Second District.

September 19, 1957.

Rehearing denied October 1, 1957.

Released for publication October 1, 1957.

Louis Lagger, and George N. Blatt, Jr., and Wise & Wise, all of Joliet, for appellants.

Francis A. Dunn, of Joliet, for appellees.

JUSTICE CROW delivered the opinion of the court. This appeal is in this court by transfer from the Supreme Court. It is the second appeal by defendants-appellants in the same case. The decree now attacked authorizes the sale of part of a parcel of land conveyed in 1849, in trust for charitable purposes, the

deed prohibiting sale, or use of the premises for other than the specified purposes.

The property involved, here called lot 56 in the city of Joliet, Illinois, was conveyed September 3, 1849 to the predecessor of plaintiffs, in trust for the purposes "that the said Lot or parcel of land shall at all times be used as a Burial Ground for the Catholic population of Joliet in Will County aforesaid and its vicinity. And for charitable and literary purposes." Language follows forbidding sale of any part.

In 1849 the land was in Joliet Township. The city of Joliet was not organized until several years later, and did not when organized include lot 56. The Catholic population mentioned was the membership of St. Patrick's Parish, having a church about six blocks east of lot 56. This parish began at once the use of the eastern part of lot 56 as a burial ground and continued that use to the present time, the ground being known as St. Patrick's Cemetery.

In 1922 the city of Joliet opened a street, Hunter Avenue, from North to South through lot 56, severing the west one-fourth of the lot from the east three-fourths. All burials were in the east three-fourths of the lot, there being no interments in the west one-fourth.

There has been no improvement or use of the part west of Hunter Avenue. Children have gathered habitually on the vacant ground to play.

That part of lot 56 west of Hunter Avenue is bounded on the north by Jefferson Street, which is Illinois State Route 52, on the west by Raynor Avenue, a principal north and southbound street of Joliet, on the south by Washington Street, and on the east by Hunter Avenue. It is somewhat triangular in shape, about 32 feet wide at one end and some 200 feet wide at the opposite curved end, containing about 1.9 acres.

In 1849 the land was prairie, of little value. It is now within a closely built area of Joliet, there being

497

no vacant lot within a thousand feet of the premises lying west of Hunter Avenue. The area is developed to commercial use and multiple housing. The present value of the portion west of Hunter Avenue for such use is $95,000.

The substantial testimony is that because of its small size, irregular shape, and location in dense traffic in a thickly populated area, that part of lot 56 west of Hunter Avenue is unsuitable for development for cemetery use.

St. Patrick's Cemetery, east of Hunter Avenue, has some burial space available, and there are other adequate places for Catholic Burial in and near Joliet. St. Patrick's is unkempt, and needs rehabilitation. The estimate of cost for needed repair and rehabilitation is $45,000 or more. There is no income, no fund, and no source of money for care of St. Patrick's Cemetery, now or hereafter.

Plaintiffs filed suit, stating the situation, and its changes, asking a decision whether the restriction against alienation in the deed of 1849 was valid, and in the event the restriction was held valid, asking a decree for sale of the tract west of Hunter Avenue, for the purpose of applying the proceeds of sale toward carrying out the intent of the trust declared in the deed.

Defendants answered denying that a sale was justified, and presented a counter complaint claiming the tract could not be sold, and that a sale would entitle them to reversion and partition.

On a prior appeal by defendants from a prior decree by the trial court that the restriction on alienation was invalid, the Supreme Court reversed and remanded, held that a charitable trust was created, and since it was a charitable trust the restraint on alienation was therefore valid, and said further:

"It does not follow, however, that a court of equity, in the exercise of its traditional power over charitable trusts, may not decree that the land, or some part of it, may be sold. If the western quarter of Lot 56 because of its severance or because of changes in the surrounding area has in fact become unsuitable for the declared purpose of the trust, or if the sale of the western quarter of Lot 56 is desirable to provide funds for the fulfillment of the basic purpose of the trust, the provision of burial grounds, then the sale may properly be decreed.

"There was evidence tending to show that the western quarter of Lot 56 is not suitable for cemetery purposes. The trial court, however, having found that no charitable trust had been created, did not pass upon the question of whether present circumstances justified the sale of the property, or decide how the proceeds should be applied if such sale were authorized. The decree of the circuit court is accordingly reversed and the cause remanded, with directions to take such further steps as may be necessary in order to make findings and enter a decree on this branch of the case": Catholic Bishop of Chicago v. Murr (1954) 3 Ill.2d 107, 111.

The case being remanded, the Circuit Court of Will county then later entered the present decree with findings of fact in substance as above stated, holding that the tract west of Hunter Avenue is unsuitable for burial ground; that the prime purpose of the trust is to provide Catholic burial for the population of Joliet and vicinity; and that the present situation and circumstances fully justify a sale of the tract involved.

The decree adjudged that the tract be sold; that the proceeds be applied to the purpose of providing burial ground for the population designated; that report be made to the Court on sale, and bond fixed; and that the Court retain jurisdiction to follow the sale and the

application of the proceeds of sale to the trust purposes.

The cross complaint of defendants was dismissed for want of equity. Defendants again appeal from that decree.

This last decree follows the directions of the Supreme Court on the prior appeal, and is supported by the evidence.

■ ■ The whole purpose and duty of a court in the field here concerned is to achieve, under changed conditions, the purpose shown by the trust instrument. The showing of need in this case appears to us fully as convincing as the showing made in City of Aurora v. Y. M. C. A. (1956) 9 Ill.2d 286, and Board of Education v. City of Rockford (1939) 372 Ill. 442, where the facts were held to justify sale for the protection and aid of the purpose of the trust created.

■ The cross complainants had no enforceable property rights in lot 56 or any part of it, in any view of the case. The charitable use to which the property is devoted demands the protection of courts. The possibility of reverter, if any such ever existed, is extinguished: Trustees of Schools v. Batdorf (1955) 6 Ill.2d 486.

The decree of the Circuit Court of Will county is, accordingly, affirmed.

Affirmed.

DOVE, P. J., concurs.