Guy B. Hardy et al., Plaintiffs-Appellants, v. Ellen Davis et al., Defendants-Appellees.

**Gen. No. 11,091.**

Second District, Second Division.
March 21, 1958.
Released for publication April 8, 1958.

516

 █ 

Harry E. Witherell, of Peoria (Davis, Witherell and Sommer, of counsel) for appellants.

William H. Small, of Galesburg for Ellen Davis.

JUSTICE SOLFISBURG delivered the opinion of the court.

This appeal involves a suit brought by the present trustees of a trust created by the Thirtieth clause of the last will and testament of Mary Davis McKnight, deceased.

The plaintiff trustees filed a complaint in the Circuit Court of Knox county seeking a construction of the last will and testament of Mary Davis McKnight, and particularly a construction of the Thirtieth clause thereof, and a determination whether any part of that trust should be applied cy pres. The complaint alleged the death of the testatrix on September 23, 1913, the probate of her will, and the closing of her estate on December 31, 1945. It set forth Clause Thirtieth of the decedent's will which provides:

"Thirtieth. To Charles M. Swank, W. A. Armstrong and Miss Ellen Davis, as trustees, and to their successors in trust, the sum of one hundred and fifty thousand dollars, to have and to hold the same in trust to build and endow in the City of Galesburg, Illinois, a home for orphan children, to be called The McKnight

Industrial Home, to be controlled and managed by them and their successors in trust. In case of the death or refusal or failure of any of said persons so named as trustees to act, or in case of a vacancy by death, or otherwise occurring at any time in said board of trustees, the remaining trustees shall have the right to appoint trustees to fill such vacancies from time to time as the same may occur."

The complaint alleged that $150,000 had been turned over to the trustees named in the will; that the Circuit Court of Knox county had assumed jurisdiction of the trust in 1924; that pursuant to the will the trustees had established a home in Galesburg, Illinois, and operated it to care for orphan girls, known as The McKnight Industrial Home, and that the same is still being maintained and operated. The trustees alleged that the word "orphan" as used in the will was construed to include children only one of whose parents is deceased and that the home has been and is ready to care for and furnish food, clothing and shelter for any orphan children who might require such care. The plaintiff trustees further alleged that the home has cared for as many as eighteen orphan children and until recent years trust income was substantially consumed in caring for such children; that recently, however, "more prosperous economic conditions and social legislation of State and Federal Governments has (sic) resulted in a substantial decrease in the need for the expenditure of funds or the use of the facilities being administered by the Trustees and occupancy of the home has been reduced to three children." The complaint averred that, accordingly, trust income was not being fully expended and was accruing each year, and, due to the social and economical conditions described, in the opinion of the plaintiffs it was no longer practical to maintain The McKnight Industrial Home. Plaintiffs in their pleading suggested that

518

better use of the trust fund might be made by providing scholarships for orphan children for higher education above the high school level, possibly at Knox College in Galesburg. In any event, the trustees prayed for a construction of the will as it applied to their duties and a direction from the Chancellor as to the proper administration of the trust in the future.

The Attorney General of Illinois was made a party defendant and answered the complaint. The answer of the Attorney General admitted the allegations of fact in the complaint, as well as the averment that the will manifested a general charitable purpose on the part of the testatrix, but the answer avoided any expression of opinion as to whether or not it was practicable or desirable to continue The McKnight Industrial Home or whether the cy pres doctrine should be applied in this case.

Certain heirs of the testatrix, allegedly representative of their class, were made parties defendant and also answered the complaint. However, these heirs, Ellen Davis and Katharine Davis, denied that the will disclosed any general charitable intent or purpose or that any need existed for the construction of the will and further denied that the court had any power to administer the funds cy pres. The answer of the heirs alleged that the Thirtieth clause of testatrix's will showed a charitable intent for only a specific and particular purpose and not a general charitable intent in favor of orphan children; that the trust had failed; that if the court should find the trust had failed, the trust property should be distributed to testatrix's heirs-at-law; that if the court should find that the trust had not failed, the court should direct that the trustees continue to maintain the orphan home.

Since the defendant heir, Ellen Davis, was under a disability, a guardian ad litem was appointed to represent her.

519

Subsequently, the plaintiffs filed a motion for severance of issue. The Chancellor granted plaintiffs' motion and ordered that the issue of whether the facts in this case and the law applicable thereto would justify the trial court exercising its cy pres power with respect to all or part of the charitable trust was to be first determined by the Chancellor in advance of any reference of the cause to the Master in Chancery of the Circuit Court. Thereafter, a hearing was had before the Chancellor on the issue severed. Testimony was offered and written exhibits submitted by the plaintiffs. The defendants offered no evidence at the hearing. Following the filing of briefs, the trial judge entered an order which provided in pertinent part:

"It is Therefore Ordered, Adjudged, Decreed and Declared by the Court that the true and proper construction, interpretation, intent, meaning, and effect of the Will of the said Mary Davis McKnight, deceased, is that the gift appearing in the thirtieth clause of said Will by which $150,000.00 was given to certain named Trustees to build and endow in the City of Galesburg, Illinois a home for orphan children to be called 'The McKnight Industrial Home' was specific and particular and for the limited purpose only of building and endowing such a home and for no other purpose; that under the terms of said Will there is no power or authority in this Court to direct any application of said funds cy pres as specifically prayed for in the petition filed by the Trustees.

"It is Further Ordered, Adjudged and Decreed that the complaint of the plaintiffs herein be dismissed for want of equity and that the same is hereby dismissed for want of equity."

This appeal was perfected from that order by the plaintiff trustees.

While it is true that evidence was heard concerning the history, function and need of the orphanage, the

520

issue made by the parties and decided by the Chancellor was the legal question whether under a proper construction of the Thirtieth clause of the last will and testament of the testatrix, the Chancellor had the power to direct an application of the trust cy pres. This is the sole issue before us for review.

Otherwise stated, the issue now on appeal is whether the Chancellor erred in holding that the will of Mary Davis McKnight, deceased, manifested a limited charitable intent to benefit only the specific orphan home named in her will, to be established as directed therein, rather than a general charitable intent to benefit orphans and that, therefore, the court was powerless to apply the doctrine of cy pres here. This is the only question decided by the Chancellor in the order appealed from, and our review is thus necessarily confined to this narrow question. Since the issue on appeal is entirely a matter concerning the construction of testatrix's will, we see no merit in reviewing evidence in the record beyond the four corners of the will.

The decedent's last will is a document consisting of some thirty-seven paragraphs spreading over approximately seven typewritten pages. The instrument is obviously the work of an attorney, and it is manifest that testatrix was a widow lady of substantial means. The early paragraphs of the will provide for some twenty-two specific bequests to named individuals totalling $85,000. Thereafter, the will provides for eleven different charitable gifts, ten of these gifts to named charities then in existence and the eleventh to The McKnight Industrial Home. The charitable gifts total $427,000. In the charitable bequest in trust to one charity, the testatrix provided that should the charitable association be dissolved or discontinue its work, then the principal fund should be paid over to Knox College of Galesburg to be added to its endowment fund. One clause of the will directs the executor

521

to sell certain jewelry of the testatrix and add the proceeds "to the fund hereinabove given for the Industrial Home." The final paragraph of the will directs that any balance remaining after payment of bequests be "added to the endowment fund of the said Industrial Home" or divided between two or more beneficiaries of the will, as the executor should determine.

██ It is, of course, fundamental that the paramount rule of testamentary construction is that the intention of the testator, as determined from the entire will, is to be given effect unless contrary to law, Bergendahl v. Stiers, 8 Ill.2d 257; McDonough County Orphanage v. Burnhart, 5 Ill.2d 230. Such intention must be ascertained from the words of the will itself, the purpose being to arrive at the intention as expressed by its language and not an intention which may have existed in the testator's mind apart from such language but which he failed to express (McDonough County Orphanage v. Burnhart, 5 Ill.2d 230; First Nat. Bank of Chicago v. King Edward's Fund, 1 Ill.App.2d 338).

██ A gift for the erection and maintenance of a home for orphans is admittedly a charitable gift (First Nat. Bank of Chicago v. Elliott, 406 Ill. 44; Skinner v. Northern Trust Co., 288 Ill. 229; Crerar v. Williams, 145 Ill. 625). Moreover, gifts to charity are looked upon with favor by the courts (Village of Hinsdale v. Missionary Society, 375 Ill. 220; Skinner v. Northern Trust Co., 288 Ill. 229; First Nat. Bank of Chicago v. King Edward's Fund, 1 Ill.App.2d 338). In First Nat. Bank of Chicago v. Elliott, 406 Ill. 44, a case to which we shall later refer, the court summarized the applicable rules thusly, pp. 55–57:

". . . Equity considers the general charitable purpose of a testator or donor as the substance of the devise or gift, the mode pointed out in the will or conveyance for effectuating this purpose being a mere

522

incident of the gift. (Village of Hinsdale v. Chicago City Missionary Society, 375 Ill. 220; Bruce v. Maxwell, 311 Ill. 479; Crerar v. Williams, 145 Ill. 625; Heuser v. Harris, 42 Ill. 425.) Where literal execution of the charity is impossible, impracticable, or inexpedient, the general charitable purpose to devote the property to charitable purposes being manifest, the trust will not be permitted to fail but the court will execute it cy pres. (Mason v. Bloomington Library Ass'n, 237 Ill. 442; Ingraham v. Ingraham, 169 Ill. 432; Crerar v. Williams, 145 Ill. 625; 2 Bogert on Trusts and Trustees, sec. 438.) The Restatement of the Law of Trusts (vol. 2, sec. 399,) defines cy pres, as follows: 'If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.' It is not necessary that the mode or manner prescribed be impossible of execution, the cy pres rule being available if use in the designated manner is no longer feasible, (Board of Education v. City of Rockford, 372 Ill. 442; French v. Calkins, 252 Ill. 243; Kemmerer v. Kemmerer, 233 Ill. 327; Crerar v. Williams, 145 Ill. 625; Stead v. American Security & Trust Co., 173 Fed. 2d 650.) In Village of Hinsdale v. Chicago City Missionary Society, 375 Ill. 220, we observed that the fact a donor directs a use of funds in connection with a specific institution, or for the construction of a new building, will not prevent an application of the funds in an association different from the one named, (Mason v. Bloomington Library Ass'n, 237 Ill. 442,) and, further, that when the direction is to erect a building upon a

particular tract of land, equity does not always deem the location of cardinal importance. Board of Education v. City of Rockford, 372 Ill. 442, is to the same effect. Similarly, a requirement in the instrument creating a trust that the charity be perpetuated as a memorial to the name of the testator or donor will be regarded as a part of the scheme of administration rather than as the inducement for the gift, bequest or devise. . . ."

■ The foregoing authorities and quotations make it clear that a general charitable intention to devote the property to charitable purposes must be found before a court of equity is warranted in sustaining the gift by application of the cy pres doctrine of trusts. (Community Unit School Dist. v. Booth, 1 Ill.2d 545; Scott on Trusts, (1956 ed.) vol. IV, sec. 399.) The guardian ad litem for the defendant, Ellen Davis, urged before the Chancellor and urges here on appeal that such a general charitable intent is not manifest in the will of Mary Davis McKnight; that the will shows an intention to benefit only The McKnight Industrial Home as an orphanage and nothing more. The Chancellor agreed with this contention.

After a careful study of the testatrix's will and the decisions of the Supreme Court of this state, we are impelled to reach a contrary conclusion. We believe that the general charitable purpose of the testatrix is clearly found in her will, when she established a trust "to build and endow in the city of Galesburg, Illinois, a home for orphan children." It is true that the gift is to the trustees, who are to establish, maintain, and control the orphan home "to be called The McKnight Industrial Home," but these words merely designate the mode or manner of carrying out the gift and are not to be considered as limiting the broad charitable purpose for which the gift was made.

524

Although provision in a will for a number of specific charities may not in itself show a general charitable intent, the very existence of a large and varied number of charitable gifts is some evidence of a general charitable purpose and intent on the part of testatrix, Bogert on Trusts and Trustees (1935 ed.), vol. 2A, sec. 436, pp. 342–47. The fact that the testatrix left almost 85 per cent of her estate to charity is of some weight as showing that testatrix's interest in charities was not narrow nor restricted.

Several recent decisions of the Supreme Court of Illinois which we regard as pertinent and controlling have involved the issue before us. Perhaps most in point on its facts is First Nat. Bank of Chicago v. Elliott, 406 Ill. 44, previously cited.

There by testator's will his residuary estate was placed in trust to the end that all of his net estate be ultimately dedicated to the founding, support and maintenance of an orphans home in Kankakee county, to be erected on six lots owned by testator in the Village of Bradley and to be called the "Alfred Fortin Memorial Orphans Home." The will referred to detailed plans and specifications prepared at the time the will was executed, and the testator expressly provided "the same to be followed strictly." The will further provided for the operation of the orphanage, first, by a designated religious order of nuns of the Roman Catholic Church and if that order did not accept administration of the orphanage, the will named a second religious order of Catholic nuns to carry out the trust. The will was very detailed and explicit in its provisions for the orphanage. Neither order of nuns accepted administration of the orphans home, and a specially organized Catholic not-for-profit corporation sought to administer the trust cy pres.

Just as in the instant case, testator's heirs advanced the contention that the will failed to evidence any gen-

525

eral charitable intent but only an intent to benefit the specific Catholic sisterhoods named in the will or the corporation which either might form to operate the orphanage, in which event cy pres could not be applied.

The court observed at pp. 57–58:

"Recourse to the will of Alfred Fortin impels the conclusion that the intended beneficiaries of the trust are orphans and foundlings and, conversely, that it does not exhibit the narrow intent of benefiting specifically the Gray Nuns, the Sisters of Charity, or a corporation to be formed by either of these Orders of Catholic Sisterhood. The provisions of the will proclaim the testator's general charitable intent. The second section commences, 'It is my will and desire that all of my net estate, . . . be ultimately dedicated to the founding, support and maintenance of the Orphans Home, as herein provided.' The same section, paragraph (1), states the testator's intention and direction that the Orphans Home, when established, shall be used for the care, boarding, lodging, maintenance and education of very young, indigent orphan children, especially foundlings, whose relatives are unable to properly care, board, lodge, maintain and educate them. In the paragraph following the attestation clause, the testator refers again to the creation of the charitable trust for the benefit of orphans or foundlings, mentions that he had long studied the situation of institutions carrying on this charitable activity, both in this country and in Canada, and 'It is my utmost desire in creating the charitable trust herein to elaborate upon this finding of fact by me that such institutions should be built more in the open.' These and other provisions confirm our conclusion that the overriding intent of Fortin's will was a general charitable intent to benefit orphans and foundlings and that, on the contrary, he was not creating a trust for

526

the benefit of either the Gray Nuns or the Sisters of Charity, 'les Soeurs de la Charite.' They were named as Orders to accomplish his general intent. The will contains many detailed provisions relative to the method of effectuating the general charitable intent of the testator but it is the general charitable intent which is controlling and not the mode or manner of executing it.

"It will be observed that the testator made no bequest or devise to his heirs-at-law, or any other beneficiaries, in the event the two named sisterhoods declined to accept the obligation which the testator sought to impose upon them. The will exhibits exceedingly careful draftsmanship and the fact that this contingency was not provided for strengthens the conclusion that the will expresses a general charitable intent, as opposed to a specific, or particular, charitable intent. . . ."

Other courts in Illinois have also attached significance to the absence of a gift over to another beneficiary or other beneficiaries in cases of this kind. (See First Nat. Bank of Chicago v. King Edward's Fund, 1 Ill.App.2d 338, 361.)

Bruce v. Maxwell, 311 Ill. 479, concerned the proper construction of a deed of conveyance wherein the grantor, a resident of Peoria, Illinois, conveyed four tracts of land in Peoria to an individual grantee for her life and then "to go to build an old man's home, Reuben Bruce trustee." Upon the death of the life tenant, the four tracts of land, widely separated, were worth about $10,000, and there were already three old men's homes in Peoria. The Chancellor had ordered the successor trustee to proceed to carry out the trust in spite of the fact that the value of the tracts made it impractical if not almost impossible. On appeal the Supreme Court reversed the order of the Chancellor, stating that under the will the Chancellor had the

527

power cy pres to administer the trust and that the only practicable thing to do seemed to be to sell the tracts and apply the proceeds to aid the conduct and maintenance of an existing old men's home which the Chancellor might select within the jurisdiction of the court.

In Board of Education v. City of Rockford, 372 Ill. 442, the plaintiff board of education of Rockford filed a complaint against the city of Rockford, the grantor's heirs, and others to apply the doctrine of cy pres to certain real estate which in 1856 had been deeded to the city "for the use of the inhabitants of School District No. Two in said city." The land had been accepted and used to erect a public school called the "Kent School." The Kent School was used until 1936 when, because of obsolescence of the school building and a shift of population in the city, the board of education transferred all its school activities to a new and modern school elsewhere in the city. The plaintiff sought to sell the Kent School and apply the proceeds cy pres for school purposes in Rockford. The trial judge dismissed the complaint as insufficient, from which order an appeal was taken. Reversing the order below, the Supreme Court held that the complaint was sufficient. In so holding the court stated, p. 452:

"From the complaint it appears that the premises in controversy, after eighty years' exclusive use for the advancement of education, are no longer adapted to school purposes and, since January, 1936, have not been so employed. In particular, the complaint charges that it is presently impracticable to use Kent School for conducting classes therein. It is not essential that the conduct of classes be impossible. Resort to the shelter of the cy pres rule is available if use in the designated manner is no longer feasible. Not only does the complaint disclose that shifting population, obsolescence, and other factors render use of Kent

528

School in its present condition of disrepair no longer practicable for the holding of classes but also that such use would be definitely hazardous. Continued literal compliance with the terms of the trust, although not impossible, would nevertheless defeat or substantially impair the attainment of the object of the trust. The general charitable intention of the grantors that the premises be used for school purposes may be satisfied, however, by pursuing the plan suggested by plaintiff, or some like plan. In order to comply with the intent of the grantors the chancellor, in the exercise of supervisory jurisdiction over charitable trusts to protect them and enforce their execution, is empowered to substitute another method, cy pres, or 'as near to' the one designated in the deed of April 12, 1856, as may be practicable, for the continued use of the premises, or the proceeds derived from the sale thereof, for school purposes for the benefit of the inhabitants of school district No. 2."

In Village of Hinsdale v. Missionary Society, 375 Ill. 220, suit was brought to construe a deed made in 1911 wherein the grantor had conveyed to the village of Hinsdale six lots, provided one lot was "to be used as a site for a Public Library Building, to be known as the Pearsons Library" and the other lots were to be sold and the proceeds therefrom were to constitute "a trust fund, for the construction and maintenance of said Library." The deed further recited: "It is made an express condition of this conveyance that, if at any time hereafter, the said Lot Nineteen (19) shall cease to be held and used for library purposes, the title of the said grantee thereto shall thereupon cease and determine, and the remainder shall pass to and the title shall be vested in the Chicago City Missionary Society of the city of Chicago, Illinois." During the next fifteen years, the five lots designated for sale were sold, the proceeds with income totalling some

$25,000. Various plans had been considered for erection of a library but were rejected as building conditions were not favorable. Finally, in 1926 the existing Hinsdale Public Library availed itself of rented space in a Hinsdale Memorial Building which had been recently erected. The village sought to use the income from the fund realized from the sale of the lots cy pres for the general purposes of the Hinsdale Public Library until the principal might be sufficient to construct an addition to the present library premises. The successor to the Chicago City Missionary Society and the grantor's heirs both opposed the village application. Holding that literal compliance with the deed would mean erection of a library building which was "inexpedient and wasteful," the Supreme Court affirmed the Chancellor's order that the proceeds of the five lots might be used for conducting and maintaining the Hinsdale Public Library. The court observed, pp. 233–34:

"Courts of equity possess original and inherent power to recognize, execute and control trusts and trust funds. (Board of Education v. City of Rockford, 372 Ill. 442; Maguire v. City of Macomb, 293 id. 441.) Equity will consider the general charitable purpose of the donor as the substance of the gift, and the mode pointed out in the conveyance for effectuating that purpose, as a mere incident of the gift. (Crerar v. Williams, supra; Heuser v. Harris, 42 Ill. 425.) Where a literal execution of the charity becomes inexpedient or impracticable, and the settlor has manifested a general intention to devote the property to charitable purposes, the trust will not be permitted to fail, but the court will execute it cy pres. (Mason v. Bloomington Library Ass'n, supra; Kemmerer v. Kemmerer, 233 Ill. 327; 2 Bogert on Trusts and Trustees, sec. 438.) It is not necessary that the mode prescribed be impossible of execution, but resort to the shelter of the cy

530

pres rule is available if use in the designated manner is no longer feasible. (Board of Education v. City of Rockford, supra.) Courts of equity have exercised their power of administration when the funds in the trust have been found to be inadequate for the charitable purpose, (Bruce v. Maxwell, 311 Ill. 479,) when additional facilities of a similar nature have become available, and a literal execution would be wasteful, (Mars v. Gibert, 93 S. C. 455, 77 S. E. 131; Adams v. Page, supra) or when a different mode of execution would more completely fulfill the charitable purpose of the donor. (Gearhart v. Richardson, 109 Ohio St., 418, 142 N. E. 890.) A clearly expressed desire of the donor that his property be devoted to another purpose, unless execution of the charitable use first named is feasible in the manner specified, will be recognized, but a secondary purpose will not prevail where the primary charitable objective of the donor can be attained by a different method. (In re Young Women's Christian Ass'n, 96 N. J. Eq. 568, 126 Atl. 610) The fact that the donor directed a use of the funds in connection with a specific institution, or for the construction of a new building, will not prevent an application of the funds in an association different from the one named, (Mason v. Bloomington Library Ass'n, supra,) or their devotion to an existing enterprise of the same character. (Bruce v. Maxwell, supra; Mars v. Gibert, supra.) Likewise, when the donor directs that a building be erected upon his own land or another named site, a court of chancery does not always consider the location to be of cardinal importance. (Gearhart v. Richardson, supra; Ely v. Attorney General, 202 Mass. 545, 89 N. E. 166; Weeks v. Hobson, 150 id. 377, 23 N. E. 215; Borchers v. Taylor, 83 N. H. 564, 145 Atl. 666.) A requirement in the trust instrument that the charity be perpetuated as a memorial to the name of the donor or of another person named will be regarded as a part

531

■■■

of the scheme of administration, rather than as the inducement for the gift. (Adams v. Page, supra.) When the specified name can be perpetuated, although in a different manner, by the means of execution available, an objection to the proposed change is without force. Mason v. Bloomington Library Ass'n, supra; In re Young Women's Christian Ass'n, supra."

Since its early decision in Heuser v. Harris, 42 Ill. 425, the Supreme Court of Illinois has never been remiss in doing everything possible to uphold and preserve charitable trusts by a liberal application of the cy pres doctrine. In addition to the previously cited cases, see for example, Catholic Bishop of Chicago v. Murr, 3 Ill.2d 107, later appealed as Catholic Bishop of Chicago v. Castle, 14 Ill.App.2d 495; City of Aurora v. Y. M. C. A., 9 Ill.2d 286; Continental Illinois National Bank and Trust Co. v. Sever, 393 Ill. 81; Mason v. Bloomington Library Association, 237 Ill. 442.

■ ■ Applying these authorities to the case at bar, we conclude that the testatrix's intention was to aid orphans in general and that she selected the means which she did merely as a preferred device or mode. (Scott on Trusts (1956 ed.), vol. IV, sec. 399.2, et seq.) She did not make detailed or specific provisions for the operation of the home. As the cited cases clearly indicate, the fact that testatrix wished to name the home after herself is not regarded as a controlling consideration in the matter of whether her charitable intent was general as distinguished from restricted, narrow, exclusive or particular. It is difficult to assume that testatrix had no interest in orphan children, apart from The McKnight Industrial Home, when she employed the rather general language she did and when The McKnight Industrial Home was not a reality in her lifetime. Failure to provide for a gift over and testatrix's obvious desire to give the bulk of her estate to charity further militate toward the conclusion we have

reached, namely, that the will in question does not prevent the Chancellor from exercising his traditional cy pres powers. We are of the opinion that the Chancellor has the power to administer this trust cy pres by devoting it to a similar purpose in a way which would be of practical benefit to the objects of the charity and should not have dismissed the complaint on that ground. It is, of course, true that the basic purpose of a charitable gift cannot be changed where the cy pres doctrine is applied. Therefore, property devised for the benefit of orphans cannot be judicially diverted to religion, relief of the aged or sick, or to general charity, or vice versa, Board of Education v. City of Rockford, 372 Ill. 442. However, this limitation of the doctrine does not rule out its application here.

We believe that justice requires that the order of the Circuit Court of Knox county be reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

CROW, P. J. and WRIGHT, J., concur.