## BISCOE vs. THE STATE.

The deed of trust executed by the Real Estate Bank having expressly and plainly fixed the compensation to be allowed the trustees for their services in the execu- tion of the trust, they clearly had no power, by an order passed by themselves, to increase it; and though it was within the power of the Chancery Court to allow additional compensation, if they had shown a faithful and efficient performance of the duties imposed by the deed, and that the compensation was inadequate, no additional compensation should be allowed where they have not faithfully performed their duties.

*Appeal from Pulaski Chancery Court.*

Hon. H. F. FAIRCHILD, Chancellor.

WATKINS & GALLAGHER, for the appellant.

HEMPSTEAD, for the appellee.

Mr. Chief Justice ENGLISH, delivered the opinion of the court.

The bill in this case was filed by the state, against the trustees and officers of the Real Estate Bank, to divest them of the trust, and to compel them to account for the assets which came into their hands under the deed of assignment, made by the bank · 2d of April, 1842.

Henry L. Biscoe, the appellant, was one of the original, and also one of the residuary trustees, and acted as such from the time of the execution of the deed, until 20th of April, 1855, when the trustees were removed by an order of the Pulaski chancery court, made in this suit, and the assets placed in the hands of a receiver, to be administered under the direction of the court; which order was confirmed by final decree, from so much of which, and from so much only, as relates to the compensation allowed Biscoe for his services as trustee, he appealed.

· The assignment was made to fifteen trustees, who were to be succeeded, in the execution of the trust, by five residuary trustees.

The portions of the deed relating to the compensation of the trustees, are as follows:

"And it is further hereby declared and agreed, by and between the parties to this agreement, that each of said trustees, and their successors, shall give bond, with security, approved, etc., etc., in the sum of etc., conditioned for the faithful performance of all duties imposed upon them under and by virtue of these presents, and for the faithful execution of the trusts hereby created; and that for and during the full space and term of two years from the date of these presents, there shall be five committees of said trustees, each to consist of three members, and each to act as agencies of said trustees, one committee at each place where the principal bank and branches of said bank are now situate; and that the following named trustees shall constitute said committees, to-wit: The committee at Little Rock shall con-

38

sist of James S. Conway, Carey A. Harris and Sam C. Roane; at Columbia, of Sandford C. Faulkner, Anthony H. Davies and Silas Craig; at Helena, of Henry L. Biscoe, William F. Moore and John Preston, jr.; at Washington, of Daniel T. Witter, George Hill and Enoch J. Smith; and at Van Buren, of John Drennen, Robert S. Gibson and Lorenzo N. Clarke.

" And it is hereby further declared and agreed, by and between the parties to these presents, that the duties and powers of each of said committees shall be to take charge of the books and papers of the respective offices of said bank, to attend to the arrangement and collection of debts due said bank; and the taking and renewal of notes; to determine upon the sufficiency of security offered; to make settlement with the officers and agents of said offices respectively; to pay out all deposits now on hand, and all balances due to officers; and generally to do, perform, and exercise all such acts, duties and powers, as said trustees may lawfully, and in their discretion delegate to them as committees and agencies; that the members of said committees shall act without any compensation, except when actually engaged in the performance of the trusts aforesaid, when each shall receive as his compensation, the sum of three dollars for every day during which he shall be so engaged: *Provided, however,* That no member of said committee at Little Rock shall be entitled to charge for more than one hundred and eighty days in any one year, and that no member of any other committee, shall be entitled to charge for more than seventy-five days in any one year.

" And it is hereby further declared and agreed, by and between the parties to these presents, that there shall be an executive board of said trustees, to consist of one member from each committee, who shall meet at the city of Little Rock, at least twice in each year, on the first Mondays in June and December, and at any and every other time when two members thereof shall call a meeting and notify the residue thereof; that the members of said executive board shall receive, in full pay

for their services, the same compensation as is now allowed to the members of the central board of said bank, and such other traveling expenses as may be necessarily incurred in the discharge of their duties; that thè duties of said executive board, shall be, to make settlements, pay off liabilities, and do all other acts and things, and exercise all powers, which, by this deed, said trustees are authorized to do and execute, in the name of said trustees, or otherwise howsoever, and which are not, by these presents required to be done by, or conferred upon said committees, or which may not be by said trustees delegated to said committees; that each committee shall, whenever any funds are received, forward the same to said executive board, and that each committee shall report to said executive board, at each regular meeting of said board, or as often as they may be required by said board to do so, a full statement of their proceedings, and of the condition and situation of the affairs entrusted tò them.

" And it is further agreed, by and between the parties to these presents, that until thè first day of July next, or until their successors are elected, as hereinafter provided, said executive board shall consist of the following members, to-wit: Carey A. Harris, Henry L. Biscoe, Sandford C. Faulkner, Daniel T. Witter and Lorenzo N. Clarke, who shall immediately enter on the discharge of their duties; and that previous to said first day of July next, each committee shall elect one of its number a member of said executive board; and from said first day of July next, said executive board shall remain unchanged, except a vacancy is caused by removal, resignation, death, or otherwise, until the expiration of two years from the date of these presents, that each committee shall be authorized to fill any vacancy in its own number, and in its representative in the executive board, during said term of two years from this date, the concurrence of two members, being in every case necessary to a choice.

" And it is further declared and agreed, by and between the parties hereto, that, at the expiration of two years from the

date of these presents, the said trustees or a majority of them, shall meet at Little Rock, on a day to be fixed by said executive board, and there elect five of their own number, who shall thereafter be sole trustees, and receive thereafter the same compensation hereby provided for said executive board: three of whom shall thereafter remain at Little Rock: and that said residuary · trustees shall thereafter fill any vacancies occurring in their own number, by election; the concurrence of three members being in every case necessary to a choice; and that each of said committees shall, immediately on the expiration of said term of two years from the date of these presents, forward to said residuary trustees at Little Rock, all the books, papers, records, funds and assets, effects and property, of said bank in their hands; and the duties of said committees shall then cease and determine."

The compensation allowed the members of the central board of directors, etc., of the bank, as fixed by an ordinance of the board, was as follows:

" *Chap.* 9, *sec.* 1. The members of the central board, and of the finance committee, shall be entitled to receive four dollars per day, for each day engaged in business, including the number of days usually required to travel to and from their offices to the principal bank; also three dollars for every twenty miles of the distance necessarily traveled, estimated by the nearest land route, to be paid them upon accounts and receipts."

The action of the trustees in relation to their own compensation, as it appears in the record before us, is as follows:

At a meeting of the trustees held November 16th, 1842, it was resolved: " that the pay of members of the board of trustees, when called together by vote of the executive board, be three dollars per day, including a reasonable time for traveling to and from Little Rock, and mileage as provided for by the deed of assignment, and the allowance for the time of travel to and from each office, shall not exceed four days coming to Little Rock, and four days for returning at any one meeting."

On the 7th June, 1843, at a meeting of the executive board,

present, Henry L. Biscoe, chairman, Sam. C. Roane, S. C. Faulkner and John Drennen, the following order was passed:

"*Ordered,* That the board understand that each trustee has the right to charge for his services in full, the *amount allowed by the deed;* such compensation being at best but inadequate to pay for the trouble and labor incurred by each, and that the same can be drawn for quarterly by each."

On the 6th of April, 1844, at a meeting of the residuary trustees, present, Henry L. Biscoe, chairman, George Hill, S. C. Faulkner, John Drennen and Ebenezer Walters: " Ordered, that there shall be four regular meetings of the board in each and every year, on the 1st Monday of January, April, July and October. That Messrs. Ebenezer Walters, Henry L. Biscoe and Sandford C. Faulkner, shall, until the further order of this board, remain at Little Rock to constitute a board for the transaction of business; and if either of them be absent at any time, he may be called to attend any meeting by the others, or by the cashier and secretary."

At a meeting held 15th November, 1844, present, Ebenezer Walters, chairman, John Drennen and S. C. Faulkner, the following order was passed:

" Ordered, That the pay of each of the residuary trustees for daily compensation and ordinary travel, shall not exceed seven hundred and fifty dollars ($750) per year."

Upon the face of this order it would seem to have been intended as a measure of economy; and to limit the aggregate amount of per diem, etc., to be taken by each trustee as compensation for his services, under the provisions of the deed of assignment, to $750 per annum. But it appears that it was not so regarded by the trustees. On the contrary, they treated it as an allowance to themselves of a salary of $750 per annum for their services, without regard to the number of days occupied by them in attending the meetings of the board, and performing the duties of the trust, as contemplated by the deed. And accordingly Biscoe was allowed a credit upon the books of the bank, in

discharge of his indebtedness, of $750 per annum from the time of the adoption of the order to the time of his removal by the chancellor. His account was so made out, from the books, by Wm. M. Gouge and Wm. R. Miller, accountants, appointed by the governor, under the act of January 15, 1855, to investigate the affairs of the bank, etc.

But the chancellor made an order, referring the matter to a special master, with directions to re-state the account "by allowing him only the per diem pay provided for in the deed of assignment, for the number of days he was shown by the evidence on file to have been in attendance at Little Rock, in the performance 'of his duties, instead of the annual compensation of $750, included in the accounts made up in the abstracts, etc."

The special master accordingly re-stated and reported Biscoe's account, as directed by the chancellor; it was approved, and a decree rendered against him for the balance thus ascertained to be due from him to the trust.

He excepted to the order of the chancellor giving the direction above referred to, and to so much of the report of the special master as related to the compensation allowed him.

The deed under which the appellant accepted the trust, expressly and plainly fixes the compensation to be allowed the trustees for their services in the execution of the trust; and they clearly had no power, by an order passed by themselves, to increase it. If they could vote themselves a salary of $750 per annum, without regard to the number of days employed by them in attending the meetings of the board, for the performance of their duties, they could have voted themselves any other sum, however large and unreasonable.

Where the instrument creating the trust fixes the compensation of the trustee, it must prevail. *Burr on Assignments*, 514; *Miles et al. vs. Bacon*, 4 *J. J. Marsh.*, 463; *Kendall vs. New Eng. Carp. Co.*, 13 *Conn.*, 392; *McMillen vs. Scott*, 1 *Munroe*, 151.

The acceptance of the trust was voluntary, and not compulsory, and if the compensation stipulated to be paid in the deed of trust, was too small, the trustees were under no obligations

to accept it: or having accepted the trust, if they found the compensation inadequate to the labor required of them, they had the privilege of ridding themselves of its burthens by resigning.

If, however, experience had proven that the services of competent and efficient men could not be procured for the compensation fixed by the deed, and that the faithful execution of the trust was likely to fail for want of the services of such persons, we doubt not but that it would have been competent for a court of chancery, having jurisdiction of the trust, upon a proper application, to have made an order for additional compensation.

Nor do we doubt but that it would have been within the power of the chancellor to have allowed the appellant additional compensation, even to the extent of the sum with which he had been credited annually upon the books of the bank, had he shown that he had faithfully and efficiently performed the duties imposed upon him by the deed of assignment, and that the compensation fixed by the deed was inadequate.

In *Barney vs. Saunders et al.* 16 *How. U. S.*, the court said: " In England, courts of equity adhere to the principle which has its origin in the Roman law, 'that a trustee shall not profit by his trust,' and therefore that a trustee shall have no allowance for his care and trouble. A different rule prevails generally, if not universally, in this country. Here it is considered just and reasonable that a trustee should receive a fair compensation for his services: and in most cases it is gauged by a certain per centage on the amount of the estate * * * But on principles of policy as well as morality, and in order to insure a faithful and honest execution of a trust, as far as practicable, it would be inexpedient to allow a trustee who has acted dishonorably or fraudulently the same compensation with him who has acted uprightly in all respects. And there may be cases where negligence and want of care may amount to a want of good faith in the execution of the trust, as little deserving of compensation as absolute fraud."

Here the chancellor refused to allow the appellant any greater compensation than that which was stipulated for in the deed. The chancellor was of the opinion that the appellant, and other trustees, had not faithfully and efficiently performed their duties, and were not executing the trust with fidelity—indeed, he was of the opinion that they had abused the trust. Hence he removed them, and placed the assets in the hands of a receiver to be administered, etc. The chancellor also found that by the negligence of the trustees, a part of the trust property had been lost, and charged the appellant with a considerable sum as his portion of the loss. He acquiesced in so much of the decree as removed him from office for want of fidelity, and in so much as required him to contribute to make up the value of property lost by the negligence of him and his co-trustees; and yet he asks us to reverse that portion of the decree in which he was refused, by the chancellor, greater compensation for the services performed by him than that fixed by the deed.

It seems that his per diem, mileage, etc., for attending the meetings of the board, amounted, according to the report of the special master, to about $590 50; while his compensation at a salary of $750 per annum, with which he obtained credit upon the books of the bank, amounted to over $8,000.

The amount of compensation, under the provisions of the deed, was made to depend upon the number of days spent by the trustees in attending the meetings of the board, the distance traveled, etc., and if the reward thus offered them was an inducement to diligence in attending the meetings, its effect, it may be supposed, was in some degree lost, by the order which, as practically construed by them, gave them an annual salary of $750, regardless of the number of days employed by them in the performance of their duties at the place, and in the manner contemplated by the deed.

It is true that the appellant says, in his answer, that he performed services for the trust when not attending the meetings of the board of trustees; but if he had a claim to additional

compensation on account of such services, we find in the record before us no evidence of their character and extent.

The decree must be affirmed.

Hon. H. F. FAIRCHILD did not sit in this case.