## FOUST, ATTORNEY GENERAL *v.* WILLIAM E. ENGLISH FOUNDATION

[No. 17,784.   Filed June 29, 1948.   Rehearing denied
July 23, 1948.   Transfer denied October 14, 1948.]

*Cleon H. Foust,* Attorney General, *Frank E. Cough-- lin,* Deputy Attorney General, *Harold V. Whitelock,* all of Indianapolis, attorneys for appellant.

*Warrack Wallace, John D. Cockran, Lew Wallace,* all of Indianapolis, and *Baker & Daniels* (of counsel), attorneys for appellees.

ROYSE, C. J.—William E. English died testate, a resident of Marion County, April 29, 1926. His will was

admitted to probate in the Probate Court of Marion County on May 6, 1926, and the executors therein named duly qualified. Their final report was approved on February 18, 1928. By Provision 27 of his will said decedent created a public charitable trust. This action involves the construction of this trust and the power and authority of the Trustee to sell certain real estate. We set out the trust provision in full:

"All the rest and residue of my estate, real and personal, wherever situated, and including the remainder interest in said Scott County property, the life interest in which is by Item XXVI hereof given to my wife, I give, devise and bequeath in fee simple unto my said wife, Helen Orr English, and the Fletcher Savings & Trust Company of Indianapolis, as trustees. Said trustees shall hold said property for the purposes, with the powers and charged with the duties hereinafter granted, or by the law implied as reasonably necessary to carry out the purposes hereof. Said trustees shall hold and manage said property with the idea of preserving the general trust estate in good condition and developing the best income consistent with the entire security of the principal. They shall have full power of sale, mortgage, lease for any length of time less than one hundred years, investment and reinvestment, improvement of real estate, pledge of personal property and all other powers relating to the management and control of said trust estate as fully as I would personally have were I then living and doing such acts; except that said Trustees shall not have the power, during the period of their trust, to sell the Scott County property in which my wife is given a life interest under Item XXVI hereof, or the property owned by me in the City of Indianapolis, Indiana, fronting on Monument Circle, and constituting that part of the property owned by me and occupied by the English Hotel and Theatre, which is not included in the ninety-nine (99) year lease dated November 5, 1919, with the Famous Players-Lasky Corporation, as modified by agreement dated March

3, 1924, wherein a part of the original property embraced in said lease was released therefrom, nor shall the Trustees have power to make any lease to said Monument Place property extending more than five years beyond the termination of the trust created in said Trustees. Said Trustees shall not be required to procure the prior consent or subsequent approval of any court or of any person or corporation to any such acts as are herein authorized to be performed by said Trustees, in order to give full legal authority thereto, and full protection to any person relying thereon.

"Without meaning to bind my Trustees thereby, it is my judgment that it would be wise for them to retain down town properties so long as the same may seem prudent, and keep the same improved so as to be readily rentable to a good class of tenants, and that any outlying properties remaining as a part of my estate should be sold when the same can be prudently done and the proceeds either applied to the reduction of mortgage indebtedness, if any exists, or to the improvement of the remaining downtown property, if there be any, or investment in good securities.

"Such trustees shall carry adequate insurance on the improvements against fire and other casualties, and if by fire or other casualty, injury to any improvement should result and the insurance monies collected should be insufficient to restore the premises or to make such new improvements as the trustees may deem desirable, or in event, irrespective of injury or casualty, the trustees should unanimously determine that any new improvements is highly necessary to the development of any of said trust property, then said trustees may execute a mortgage upon any real estate so to be improved securing their obligation given on account of the monies borrowed to accomplish such improvements; and in such event, it is my judgment that when reasonably possible, the trustees should set aside some fair portion of the income from the property so improved, thus enabling them to gradually pay off such mortgage indebtedness. In event of failure to qualify, refusal to act or resignation at any time of the

Fletcher Savings & Trust Company of Indianapolis, as one of the trustees named hereunder, then the Probate Court of Marion County, Indiana, or other Court having jurisdiction of trustees, shall be authorized to appoint a successor on the application of any interested party, said successor to be selected from among the three leading Trust Companies doing business in the city of Indianapolis (if any of them will consent to act), such leading companies to be determined by the amount of capital and surplus thereof and if such Company so designated shall agree to accept the trust by written instrument duly executed and filed in such Court, then such trustee shall succeed to all the rights and obligations herein given to and imposed upon said Fletcher Savings & Trust Company.

"The same right of change, selection and substitution as to Trust Companies, shall continue so long as said trust shall last, provided, however, that no Trust Company shall be so selected during the period of trust that has not the joint approval of the individual trustee and the Judge of the Marion County Probate Court. Said individual trustee, my said wife, shall not be required to give bond for the faithful performance of her duties as trustee, nor shall she receive any compensation for services as said trustee.

"From the net income derived from said trust estate, said trustees shall pay to my said wife, Helen Orr English, for the term of her natural life, if she so long remains unmarried, or if she shall again remarry, then until she shall so remarry, the sum of Eighteen thousand ($18,000) dollars per year, the same to be paid to her each year in monthly, quarterly or semi-annual installments as she may prefer. Under a trust agreement executed November 10th, 1917, I provided that my wife should receive an income of Six Thousand ($6,000) dollars per year for life from a trust created securing same and it is my intention now in providing this additional income of Eighteen thousand ($18,000) dollars as provided in this clause of my will that she shall have a total annual income from these two sources,

and as provided by them, of Twenty-four Thousand ($24,000) dollars per year, and I direct that my trustees shall see to it that the income of Eighteen thousand ($18,000) dollars per year as herein provided, shall be paid to my said wife in advance of all other payments which they may find it necessary to make, but I suggest to my said wife that if at the end of any year she finds that she has not used the full amount of said income of Eighteen thousand ($18,000) dollars per year, that she return said trust fund such portion of said unexpended income as she may deem advisable. Said Helen Orr English shall have no right to anticipate, assign, pledge or in any way dispose of said income of Eighteen thousand ($18,000) dollars, as herein provided, and any attempt on her part so to do shall be utterly void and of no effect, and shall confer no right whatever upon any other person or corporation to whom she may attempt to sell, assign or pledge the same.

"In addition to such fixed annuity of Eighteen thousand ($18,000) dollars per year, said trustee shall, from such net income, pay to my said wife at the end of each calendar year such amount as my said wife may reasonably have expended during said year in excess of the net receipts of said Englishton Park Estate in which she is given a life interest under Item XXVI hereof, in the necessary upkeep and management of said Englishton Park Estate; provided, however, that the determination of what constitutes reasonable expenditures in such regard shall be wholly subject to the determination and approval of the Trust Company serving as one of the trustees, as herein provided, but if dissatisfied with the decision of said Trust Company as to such expenditures my said wife may appeal to the Judge of the Probate Court of Marion County whose decision of the question shall be final.

"In this item of my will, as well as in other items of the same, I have made provision against the remarriage of my said wife. I have not done this because I believed there was any probability that she would want to remarry, but I have made the said provision for her protection against the

machinations of the unscrupulous and the designing who are always ready and waiting to prey upon unprotected women and children, and she will be entirely alone in the world without near relatives or protectors after my death.

"The remaining portion of the net income from such trust estate shall be used by said trustees in the discharge of any indebtedness which they may have incurred in connection with the management of said trust property, including any mortgage indebtedness upon any of such trust property, whether placed by me in my life time, or by my said trustees, or by my executors under the provisions of Item One of this will. Should there be any surplus income after the payment of all such indebtedness, the same shall be set aside and retained for purposes of improvement and development of the trust property, or if not so used, to be turned over with the trust property at the close of the trust period hereinafter provided.

"At the death of my said wife, or at her remarriage, if she should again remarry, said trust estate shall be conveyed in its entirety to the individuals then constituting the Trustees of The Indianapolis Foundation, as created by resolution adopted by the Boards of Directors of The Union Trust Company of Indianapolis, Fletcher Savings & Trust Company of Indianapolis, and The Indiana Trust Company of Indianapolis, Indiana, January 5, 1916, and said Trustees and their successors as Trustees, chosen in the manner provided for the choosing of Trustees under the resolution creating said The Indianapolis Foundation, shall take and hold the title to said property on the trusts, with the powers and for the purposes hereinafter set forth; provided, however, in event said individuals who then constitute said Trustees of the Indianapolis Foundation, shall see fit to organize a corporation under the laws of the State of Indiana permitting the organization of charitable corporations, for the purpose of taking title to and administering said trust estate, they shall be authorized so to do, and upon the organization thereof the Trustees under this will hereinabove named shall convey all of said trust property to said

corporation which shall hold the same for the purposes hereinafter set forth.

"It is my purpose, in the first place, that all of such property shall constitute a charitable trust, and that the same shall be administered either by said Trustees, as individuals, or said corporation, if one be formed to take title thereto, for the purpose of carrying out primarily the two charitable purposes hereinafter mentioned, and subject thereto for general charitable purposes as hereinafter directed.

"The property located on Monument Circle, in the City of Indianapolis, of which I am now the owner, known as the English Hotel and Opera House Block, other than that part thereof under ninety-nine (99) year lease, as hereinabove referred to, if the same has not been improved with a new building during the period of the primary trust hereinabove created, I desire said Trustees of such charitable trust to cause to be improved by the erection of a suitable building thereon (unless I have disposed of said property prior to my death, and in such event, said building to be erected on some other suitable property or location either owned by me and passing to said trust, or purchased by said Trustees), which will always be known as the 'William E. English Charity Home,' and shall always be held in trust for the use of organized Indianapolis charities. It is my wish and will that such charities as by said Trustees are deemed worthy, shall be permitted free of charge and without restriction as to race, creed or color, to have their office headquarters in said building, and to have accommodations for the meeting of their officers and those interested in the management of their affairs, and for the proper transaction of their necessary business. Said Trustees shall, however, at all times, have absolute discretion uncontrollable by any Court, person or organization whatsoever, as to what charities shall have rights in such home and as to the extent and duration of such rights, and it is my desire that the poor, the needy and suffering of the City of Indianapolis shall receive the benefit from the bequest and that said property shall become and

forever remain the headquarters of Indianapolis organized charities, and that during the future life of the City of Indianapolis, it shall be the home and center of organized charity work conducted in said city.

"Insofar as regards the property known as the 'Englishton Park' estate (being the same property in which my said wife is given a life estate under Item XXVI of this will), I desire that said Trustees (or said corporation, if a corporation be formed) shall keep and maintain the same as a summer home (with authority to extend the same into other seasons, if desired) for poor, sick and indigent children, primarily of Marion County, and secondarily, of Scott County, Indiana, under such rules and management as said Trustees, or said corporation, may determine, and with complete discretion as to the manner in which they shall carry out this bequest, including the entrusting of the practical operations of said home to some other organization or institution, if said Trustees (or said corporation) shall determine such course shall be best. Said home shall always be known as 'The Rosalind English Home for Sick and Indigent Children,' in memory of my dearly beloved daughter, Rosalind.

"The net income derived from said trust estate, insofar as the same is not expressly set apart for specific charitable uses in the foregoing provisions, shall be used by said Trustees (or said corporation, if one be formed to take title to said trust estate) after paying all necessary expenses of upkeep and maintenance:

(a) In defraying the expenses of the operation of said 'The Rosalind English Home for Sick and Indigent Children.'

(b) In assisting organized charities in the City of Indianapolis to such extent and in such proportions as said Trustees (or said corporation) may, in their own absolute discretion, deem wise and best.

"Provided, however, it shall always be within the discretion of said Trustees to set aside from such income such portion thereof as they may

deem best, to discharge such, if any, mortgaged indebtedness as may exist against any of said property at the time it passes into their hands, or that may be placed thereon by them incident to the improvement of any of said trust property, or to create a reserve fund to meet future contingencies in the way of improvements, betterments, etc.

Said Trustees (or said corporation), shall have full and absolute power to sell and convey a complete fee simple title to any property coming into their hands, as part of the said trust estate other than said Englishton Park property and said Monument Circle property, which is specifically set aside as a Charity Home, and in making any such sale, they shall not be required to secure the order or approval of any court, or the consent of any person, persons or corporation whatsoever. Said Trustees shall have full power to make leases, mortgages, pledges of personal property or otherwise to deal with said property for the purpose of fulfilling the trusts hereinabove expressed, and shall not only have the powers herein given, but any other necessary or proper powers for the purpose of carrying out the general purposes expressed in this will. It is my purpose only to restrict and restrain their actions insofar as affects a sale and conveyance of the two portions of property hereinabove mentioned which are dedicated forever to charitable uses."

This provision was amended by a codicil as follows:

"Codicil No. 1. As part of my said will I provided for the creation of a Trust Estate and appointed my wife, Helen Orr English, and the Fletcher Savings and Trust Company of Indianapolis as Trustees thereof. As a part of said clause providing for said Trust Estate I provided that there should be paid by said Trustees, from the income therefrom, to my said wife Helen Orr English annually the sum of Eighteen thousand ($18,000) dollars, the same to be paid by said Trustee in advance of all other payments to be by them made. I now by this codicil desire to strike from

and take out of said clause of said will this provision entirely and substitute in lieu thereof a provision providing that my said Trustees shall pay annually to my said wife Helen Orr English the entire net income from said Trust Estate, and by this codicil I now so will and direct that said Trustees shall so annually pay to my said wife Helen Orr English said entire net income from said Trust Estate. All the other provisions, requirements and conditions of the said clause of my said will as to said Trust Estate are to remain wholly unchanged."

While the estate was being administered in the Probate Court of Marion County decedent's widow, Helen Orr English, brought an action to construe the terms and provisions of said will, and asking that the executors of said will be authorized to enter into a 99-year lease for Parcel I of the Monument Circle property. She named as defendants in said action Helen Orr English, Executrix and the Fletcher Savings and Trust Company, Executor of the last will and testament and estate of William E. English, deceased; Helen Orr English, and the Fletcher Savings & Trust Company of Indianapolis named as trustees of the estate of William E. English, deceased, The Indianapolis Foundation, Josiah K. Lilly, Henry W. Bennett, Gustav A. Efroymson, Francis H. Gavisk, Louis H. Levey, and Henry H. Hornbrook, Trustees of The Indianapolis Foundation. The cause was tried to the court which made its finding and entered judgment. The pertinent portion of that judgment is as follows:

*"Tenth:* That said defendants, Helen Orr English and the Fletcher Savings & Trust Company, Trustees of the estate of said William E. English, deceased, have full power and authority to lease for any period of time, less than one hundred (100) years, said parcel number one of said above described real estate (Parcel No. 1 as described

in Finding No. 3), and said trustees are hereby empowered and directed to negotiate a lease thereon for a term of not more than one hundred years.

"*Eleventh:* That in the event said parcel. number one of said real estate should be leased for any period extending more than five years beyond the death of said plaintiff, Helen Orr English, by said defendants, Helen Orr English and the Fletcher Savings & Trust Company, Trustees of the estate of William E. English, the Trustees of said Indianapolis Foundation are authorized and empowered, after the death of said plaintiff, Helen Orr English, to erect on any other suitable real estate owned by said William E. English at the time of his death, a building to be known as the William E. English Charity Home, and which said building shall always be held in trust for the use of organized Indianapolis Charities, or said Trustees of said Indianapolis Foundation may purchase some other suitable property, or location, and erect a building thereon (if by them deemed desirable or necessary) to be known and used as the William E. English Charity Home, and in order to establish said Home, said Trustees of said Indianapolis Foundation, are under such conditions, authorized, and empowered, to sell said parcel number one hereinabove described, or any other real estate belonging to said trust, except said Englishton Park Estate, in Scott County, Indiana."

From this final judgment there was no appeal.

Subsequent to the final judgment approving the final report of the executors of said estate the widow, Helen Orr English, married one Frank J. Prince. She died testate June 16, 1932, leaving as her sole survivor and heir at law her widower Frank J. Prince, who was named and qualified as executor of her estate and continued as such until said estate was finally settled. Thereafter, Frank J. Prince, as the sole heir at law of said Helen Orr English Prince, brought an action in the Probate Court of Marion County against

the Fletcher Savings & Trust Company, certain individuals as the devisees in Trust, and Trustees under the will of William E. English, and appellee herein, by which he asserted an interest in the property of said trust. After the trial of this action the Probate Court entered its final judgment declaring said Prince had no claim, right or title to any of said property, and that he take nothing by said action. As part of said decree the court held:

> "That the said defendant, The William E. English Foundation, now holds the said above described real estate as the trustee of a valid public charitable trust in accordance with the terms of the last will and testament of said decedent and particularly Item 27 thereof and is required and obligated as the trustee of such public charitable trust to carry out and perform the conditions of said last will and testament and to administer and dispose of the property now in its possession as trustee in accordance with the terms of said will, or, if it shall be found impractical in any respect so to administer said trust, or any part thereof, then upon such terms and conditions as shall from time to time be fixed and prescribed by the Court having jurisdiction of public charitable trusts, in an appropriate proceeding brought for that purpose."

Appellee, as Trustee under the will of William E. English, brought this action for a construction of said trust provision, and instructions in reference to the proposed sale by it of the Monument Circle real estate.

We do not deem it necessary to set out in full the lengthy complaint herein. In substance, it avers the facts hereinbefore set out. It then alleges the real estate on Monument Circle is subject to two 99-year leases; that each of said leases may be cancelled by

appellee on six months' written notice; that the Equitable Life Assurance Society of the United States made an offer to purchase said property; that after careful consideration by appellee and its Board of Directors, appellee and said Society entered into a written agreement for the sale of said property to said Society for the sum of $2,100,000, subject to the approval of the Probate Court. The complaint then continues, in part, as follows:

"15.   It is the considered judgment of plaintiff and its Board of Directors that it is to the substantial advantage of plaintiff, as Trustee, and essential to the carrying out of the primary purposes of the will of the said William E. English, including the establishment of a William E. English Charity Home to house offices of public charities, that said real estate be sold in view of the fact that it would be impracticable to erect such Home upon this particular real estate because the funds in said trust are not adequate to construct and maintain such Home thereon. The construction of a new building upon such real estate would be a business venture involving several millions of dollars, necessitating heavy loan and mortgage commitments, which said trust should not undertake. Said Monument Circle real estate is now subject to local taxes, as determined by a final adjudication in litigation brought by said Foundation to decide the question, which taxes are estimated to amount to a sum between $40,000 and $50,000 annually. To carry out the primary intentions of said will, it is advisable that said real estate be sold so that funds will be available for the purchase of less valuable real estate and the establishment and maintenance of a Home thereon, as is authorized in the decree of this Court of July 2, 1927, hereinbefore mentioned.

"16.   The price offered by said Society is the highest and best offer received by plaintiff.

"17.   By virtue of the proceedings hereinbefore set forth, it has been adjudged and decreed, among

other things, by this Court that there was created under the last will and testament of the said William E. English a valid, public, charitable trust, of which plaintiff is Trustee; that plaintiff, as such Trustee, is now the owner in fee simple of the real estate hereinabove described; that neither the heirs of the said William E. English nor of the said Helen Orr English Prince have any right, title or interest in or to said trust or, particularly, in or to said real estate; and that plaintiff, as such Trustee, is authorized and empowered to carry out the general purpose of said trust by selling said real estate and utilizing the proceeds for the performance of the primary purposes of said public, charitable trust as declared in said last will and testament of the said William E. English.

"18. Plaintiff believes that it is to the best interests of said public, charitable trust and essential to the performance of its declared purpose to establish said Home, that the aforesaid real estate be sold and that the said agreement between plaintiff and said Society be, by the Court, approved, confirmed and ordered to be performed."

All of the appellees filed answer under the rules. After trial the court entered judgment as follows:

"1. That plaintiff, The William E. English Foundation, an Indiana charitable corporation, Trustee pursuant to the will of William E. English, deceased, is the trustee of a valid public charitable trust and as such is the owner, in fee simple, of the following described real estate situated in Marion County, to-wit: (Description).

"2. That none of the following defendants herein, namely, the heirs-at-law, legatees, devisees or living descendants of William E. English or of Helen Orr English Prince or of Rosalind English Walling, or the trustees under the trusts created by the respective wills of Willoughby G. Walling and William English Walling, or either of the wives of the said Willoughby G. Walling and William English Walling, or the said Frank J. Prince has any right, title or interest in or to said public

charitable trust or said real estate or any other asset of said trust.

"3. That the sale of said real estate by said Trustee is both advisable and necessary in order to carry out the primary charitable purposes expressed in said last will and testament and such sale is in the interest of each of the charitable organizations which are defendants herein, namely, The Indianapolis Community Fund; Central Indiana Council, Inc., Boy Scouts of America; Family Service Association; Visiting Nurse Association of Indianapolis; and The Indianapolis Orphan Asylum; as representatives of all charitable beneficiaries concerned.

"4. That, pursuant to the primary purposes of the last will and testament of William E. English, deceased, and consistent with the prior decrees of this Court, plaintiff, The William E. English Foundation, as such Trustee, is hereby authorized, empowered and directed, in accord with the conditions of this order and decree, to sell and convey said real estate at private sale to said Equitable Life Assurance Society; and said written contract of sale between said Society and said Plaintiff is hereby confirmed and approved, and said plaintiff is hereby authorized, empowered and directed to do, and cause to be done, all things necessary or advisable to perform the conditions thereof on its part to be performed, including the obtaining of possession of said real estate in such manner as shall comply with the terms of said agreement or shall be satisfactory to plaintiff and said Society and, upon performance of said conditions, and of the conditions of this order and decree, to complete said sale, by delivery of a warranty deed to said Society and by receipt of the purchase price, the net proceeds therefrom, after payment of all commissions, fees, taxes and expenses of every kind, to become part of the assets of said public charitable trust.

"5. That notice of said sale be published once in one newspaper of general circulation published in the City of Indianapolis, such publication to occur at least ten days prior to such sale, and such sale to be made to said Society, in accordance with

the terms of said written contract, in the event that no higher and better offer is received prior to the time of said sale.

"6. That this Court retains jurisdiction of this matter until completion thereof and the plaintiff is required to make due report of its proceedings under this order and decree.

"7. That said plaintiff corporation, though not required so to do, may at any time apply to this Court for instructions relating to the performance of its trusts under the will of the said William E. English."

Subsequently, appellee caused a notice of sale to be published in accordance with said order and proof of such publication was duly filed. Appellee reported to the court its sale of said property and the court entered an order approving the sale and the deed of appellee to the Society.

The error assigned here is the overruling of appellant's *motion for a new trial*, which questioned the sufficiency of the evidence and the legality of the trial court's decision. The minor appellees were represented in this court by a Guardian, *ad litem*.

There is but one real question in this case. It is: Did the trial court have the right to make the order it did herein? Appellant and appellee concede the property involved herein is trust property owned by appellee.

Before considering the contentions of appellant we deem it expedient to consider the rule which governs actions of this nature.

In Scott on Trusts, Vol. 3, p. 2044, § 381, it is stated:

"The power of a court of equity to permit or direct a deviation from the terms of the trust is at least as extensive in the case of charitable trusts as it is in the case of private trusts. The courts will direct or permit a deviation

from the terms of the trust where compliance is impossible or illegal, or where owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust. Thus it has been held in numerous cases that the court may authorize the sale of property although such sale is not authorized or is forbidden by the terms of the trust."

In the Restatement, Trusts, Vol. 2, § 381, at page 1177, Comment (e) is as follows:

"*Where sale of land forbidden by terms of trust.* If a testator devises land for the purpose of maintaining a school or other charitable institution upon the land, and owing to a change of circumstances it becomes impracticable to maintain the institution on the land, the court may direct or permit the trustee to sell the land and devote the proceeds to the erection and maintenance of the institution on other land, even though the testator in specific words directed that the land should not be sold and that the institution should not be maintained in any other place."

To the same effect see 14 C.J.S., Charities, § 50, pp. 510, 511.

Section 56-621, Burns' 1943 Replacement, provides:

"Upon the complaint of the trustee or cestui que trust of any trust, filed in the circuit court or superior court of the proper county, any real estate in said county, belonging to or subject to said trust, may be sold, by order of said court, as hereinafter provided. It must be set forth in the complaint, and shown to the satisfaction of the court, either:

First. That the real estate, so held in trust, is liable to waste or depreciation in value.

Second. That the taxes, street assessments, or costs and expenses for repairs exceed the income of said property, and are liable to defeat the intention of the person creating the trust.

Third. That the sale of the property and the safe and proper investment of the proceeds would inure to the advantage and benefit of the cestui que trust, and fulfill the purposes of the trust."

Appellant first contends there is no allegation in the complaint that the charitable trust would fail or that the primary purpose of the trust cannot be carried out in conformity with the testator's directions as set forth in the will. We are of the opinion rhetorical paragraph 15 of the complaint hereinbefore set out is sufficient to overcome this objection.

It is next contended the decree authorizing the trustee to proceed with the sale of the property is invalid because no bond was executed by the trustee and the same was not required.

Chapter 178, Acts 1937, § 1, § 2-4723, Burns' 1946 Replacement, provides:

"In any case where real estate is to be sold under the orders of any court of competent jurisdiction, and where the law requires that a bond be given for the faithful accounting of all money which may come into the custody and possession of the guardian, trustee, receiver, commissioner or other person appointed by the court to make such sale, it shall not be necessary for such guardian, trustee, receiver, commissioner or other person to execute such bond until a sale of such real estate has been ordered by the court having jurisdiction, or until such time as the court, in its discretion, may order and approve for the safeguarding of such assets."

While the sale of the property has been approved, the Trustee has not received the proceeds, and we may assume the Probate Court of Marion County will order the bond when in its discretion it determines it should be filed. The decision of the trial court is not contrary to law.

Appellant finally contends the decision of the trial court is not sustained by sufficient evidence. Insofar as this action is concerned it was the primary purpose of the testator to provide for a new building to serve as the office headquarters of Indianapolis charities. The provision of the will creating the trust clearly indicates testator desired this home to be built on other property if it was not feasible to build it on the property in question.

At the trial of this cause a certified copy of the final decree of the Probate Court of Marion County in the action brought by Helen Orr English in 1927 (hereinbefore referred to) was introduced in evidence. In that case the court found that the testator was engaged, until a few days before his death, in an effort to negotiate a 99-year lease on the property involved in this action. The pertinent portion of the judgment in that case has heretofore been set out in this opinion. Also a certified copy of the final decree of the Probate Court of Marion County in the action filed by Frank J. Prince and hereinbefore referred to.

The evidence in the record and the reasonable inferences which may be drawn therefrom, are sufficient to justify the trial court in finding that pursuant to the judgment in the action by Helen Orr English the trustees under the testator's will leased the property involved in this action to the Market Circle Realty Company for a period of 99 years. This latter Company has not been able to meet its obligations under the lease. The buildings on this property are antiquated and would require the expenditure of large sums of money to keep them in their present condition; that the erection of a new building on these premises would necessitate a business venture requiring heavy loans and mortgage commitments which might endanger the

primary objective of the testator; that conditions have so changed since the execution of the will as to render the building of a home for the use of organized charities on this property inexpedient and impracticable; that the offer of $2,100,000 is in excess of the appraised value of this property and is the highest and best bid received therefor; that when such sale is consummated appellee can and will purchase other property and erect thereon a suitable home to carry out the primary purpose of the testator; that such sale is for the best interests and benefit of said trust.

We are of the opinion the evidence is sufficient to sustain the decision and judgment of the trial court.

Judgment affirmed.

NOTE.—Reported in 80 N. E. 2d 303.