ANDERSON *v.* RYLAND.

5-2195                                                      336 S. W. 2d 52

Opinion delivered June 6, 1960.

*Joe Holmes,* for appellant.

*Coleman, Gantt & Ramsay, E. Harley Cox, Jr.,* for appellee.

ED. F. McFADDIN, Associate Justice.   The question here presented is the power of a court of equity to sanction a deviation from one portion of a charitable trust instrument in order to accomplish the larger purpose of the charitable trust.   Stated another way, the question is the power of a court of equity to permit a sale of the

trust property, even though the trust instrument states that the property cannot be sold.

In 1889 Joseph Merrill executed a trust indenture creating the Merrill Institute in Pine Bluff. The instrument recited in part:

"Know All Men by These Presents, that I Joseph Merrill of the City of Pine Bluff, in the County of Jefferson in the State of Arkansas being desirous of doing all the good I can while living and that the benefits may last when I am gone, and believing the most effectual way to accomplish this object is to provide some place of instruction and amusement to attract the young white people and bring them under influences calculated to elevate and improve them physically, mentally, morally and spiritually; Now therefore in consideration of One Dollar ($1.00) in hand paid and the premises herein set out, I Joseph Merrill do hereby give, grant, bargain, sell and convey . . ."

Then were named certain trustees, and there was conveyed to them a parcel of real estate which is situated at the corner of Fifth Avenue and Main Street in Pine Bluff. Specific wishes of Mr. Merrill were given for the use of the property as a gymnasium, lecture room, library, and that there be ". . . such other instructions in said Hall as will improve and elevate the physical, mental, moral and spiritual condition of those who attend them; Provided that no Sectarianism or Partisan Politics shall ever be taught therein. No gambling, no intoxicating drinks, no immoral books or other like publications shall ever be allowed in the said Institution. Should the means at the command of the Board of Trustees justify they shall in addition to the above provide and maintain a library with such Literature as shall further the objects of the Institution." The instrument also recited — and this is the portion that causes the litigation:

"The Trustees shall have no power to sell, convey, or in any manner encumber the property herein conveyed or any part thereof. . . . But a breach of these

restrictions herein or any of them, on the part of the Board of Trustees, or by their knowledge or consent shall in no case work a forfeiture of this grant, but shall only give the said Joseph Merrill, his heirs and assigns, and on his or their failure to act, then any resident citizen of the City of Pine Bluff, Arkansas the right to take such actions as will lawfully and promptly secure and maintain all rights and privileges herein granted.''

With funds provided by Mr. Merrill the trustees[1] erected a building on the property, and the Merrill Institute has continued to this day. In *Atkinson* v. *Lyle,* 191 Ark. 61, 85 S. W. 2d 715, there was an effort by the trustees to mortgage the property; but this Court denied the trustees the power to execute the mortgage. For the past several years the trustees have allowed all of the building of the Merrill Institute — except for two store buildings which are rented for revenue purposes — to be used by the Boys' Club of Pine Bluff; and a splendid youth program has been maintained, with instruction in crafts, physical welfare, showing of moving pictures, etc. But the location of the Merrill Institute is at the most traveled intersection in the City of Pine Bluff, and it is hazardous for youth to go through the traffic to reach the Institute.

Recently, a public spirited citizen of the City has agreed to donate to the Merrill Institute a large tract of land located in a residential district so that a new building may be erected for the Merrill Institute. The trustees can sell the present property at Fifth Avenue a Main Street for $150,000.00; and they propose to use a substantial part of this money to erect a building at the new location; and the trustees are very desirous to accomplish all of this. To test the power of the trustees to sell the original property at Fifth Avenue and Main Street and to use the proceeds for the new building, the appellant, as a citizen and taxpayer, brought this suit against the trustees. After a patient hearing the Chancery Court found that the trustees should be accorded the

---

[1] The trust instrument provided that the trustees could select their successors, and the standing of the present trustees is unquestioned.

power to proceed as they planned. The Chancellor delivered a lengthy opinion, a major portion of which we copy:

## CHANCELLOR'S OPINION

"This is a friendly suit brought by a taxpayer of Pine Bluff for himself and other taxpayers against the trustees of the Merrill Board. The Defendant Trustees filed an answer and in the answer they pray that this court give them authority to sell property belonging to the Merrill Trust. The Court will treat the prayer contained in the answer as a request for instructions by the Trustees concerning their duties and responsibilities as Trustees.

"The facts as brought out by the evidence, briefly stated, are as follows:

"One Joseph Merrill created the Merrill Institute, a trust, in February, 1889, for the purpose, using the language in the Trust instrument: —'. . . to attract the young white people and bring them under influences calculated to elevate and improve them physically, mentally, morally and spiritually'. To carry out this Trust, he conveyed to the Trustees a tract of real property located at 5th and Main Streets in Pine Bluff, and provided for the erection of a building thereon.

"One of the terms of the Trust provides that the trustees shall have no power to sell, convey or in any manner incumber the property.

"There are three issues to be determined by this Court, namely: (1) Is the trust property being used today for the purpose or purposes designated by the settlor? (2) If the Trust property is being used in a manner that accords with the Settlor's intention, will the Settlor's intention be thwarted and will the innocent beneficiary suffer if the trustees' request is denied? (3) If this Court should find that the Settlor's intention is being thwarted due to no fault of the trustees, but because of unusual circumstances having arisen not foreseen or anticipated by the Settlor, and if the Court should fur-

ther find that the innocent beneficiary will suffer, does this Court have the right, in the exercise of its inherent equitable powers, to permit the trustees to sell the trust property in deviation from the express terms of the trust instrument?

"These issues will be discussed in the order listed.

"(1) Is the trust property being used today for the purpose or purposes as set forth in the deed in trust?

"The evidence indicates that since 1946, the property has been used and occupied by the Boys Club of Pine Bluff. Even though Boys Clubs as we know them today were not in existence in the year 1889, the year the deed in trust was executed, nevertheless, there is no question that the present use of the property is completely within the meaning of the trust purposes as set forth in the deed in trust. Mr. Merrill wanted to provide some place of instruction and amusement to attract the young white people and bring them under influences calculated to elevate and improve them physically, mentally, morally and spiritually. It is the opinion of this Court that no youth organization of our community or any other community could meet this requirement any more than a Boys Club. If Mr. Merrill were living today, it is beyond the shadow of a doubt that he would say 'well done' to these trustees for the manner in which they have used this property.

"(2) If the trust property is being used in a manner that accords with the Settlor's intention, will the Settlor's intention be thwarted and will the innocent beneficiary suffer if the trustees' request is denied?

"The Court finds that the Settlor's intention will not only be thwarted, but that the beneficiary, the Boys Club of Pine Bluff, is suffering and will suffer more as time goes by. The undisputed facts reveal that when Mr. Merrill created this trust in 1889, the City of Pine Bluff was a small town; that there was no vehicular traffic; that there were no thoroughfares running adjacent to the property. The evidence further reveals that since that time, the city of Pine Bluff has grown in population to

a metropolis exceeding 50,000 in and around the city. The location of the trust property is in the busiest location in the city, being adjacent to Main Street on the west and Fifth Avenue on the South. Fifth Avenue also is Highway 65, a U. S. Highway running the entire length of the State and heavily travelled. Both of these streets are crowded with vehicular traffic every day to such an extent that an extreme hazard now exists to the young boys who go to and from the Boys Club.

"The Court will observe that it has only been by an act of providence that only two boys have been injured in and around this location . . . It is the opinion of the Court that the circumstances have so changed since execution of Mr. Merrill's trust declaration that his wishes and purposes are being thwarted. The Court further finds unless relief is granted to the trustees, the innocent beneficiary will greatly suffer, whereas, if their request is granted the wishes and intention of the Settlor will be more fully carried out and the trust property preserved.

"(3) If this Court should find that the Settlor's intention is being thwarted due to no fault of the trustees, but because of unusual circumstances having arisen not foreseen or anticipated by the Settlor, and if the Court should further find that the innocent beneficiary will suffer, does this Court have the right, in the exercise of its inherent equitable powers, to permit the trustees to sell the trust property in deviation from the express terms of the trust instrument?

"The recent case of *The George W. Donaghey Foundation* v. *Little Rock University,* decided in the Supreme Court of Arkansas on the 29th day of February, 1960, and found in Vol. 106 of the Law Reporter, No. 8, at page 245,* will become the land-mark case in Arkansas on the authority of trustees to relieve innocent beneficiaries from injury in cases such as is now before the Court.

"The Supreme Court in that case, in placing much emphasis upon the Settlors' intention, stated as follows:

---

*231 Ark. 748, 332 S. W. 2d 497.

'Will equity permit an innocent beneficiary to suffer under such circumstances? The answer has been given many times.'

"Then the Court quoted from 1 Restatement of Trusts 2nd, Section 167, under the heading of 'Change of Circumstances', as follows:

'. . . "The Court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized *or forbidden by the* terms of the trust." ' (My emphasis.)

"The Supreme Court in this important case also quoted from 89 C. J. S. Trusts, Section 87e (2), to the following effect:

' "In an emergency, or in circumstances not anticipated by the settlor, an equity court may, in order to preserve the trust or effectuate its purpose, authorize the trustee to deviate from its terms. * * * A Court of equity will put itself in the trustor's place and endeavor to authorize the trustee to deviate from the terms of the trust in a manner which the court believes the trustor would himself have authorized if he could have anticipated a necessity for subsequent alteration of his plan." '

"The general rule as to the powers of a court of equity to act in matters such as this and under circumstances previously set out is found in 54 American Jurisprudence, page 225, where it is stated:

'While generally the administration of a trust must accord strictly with the intent of the settlor and the terms of the trust, and while ordinarily even a court of equity has no right to authorize the trustee to depart therefrom, and will do all within its power to see that the trust is executed in accordance with its terms, it is

generally agreed that a court may, upon the occurrence of emergencies or unusual circumstances not anticipated by the settlor, in order to carry out his ultimate purpose, and to preserve, or to prevent loss or destruction of, the trust estate, in the manifest interest of the trust estate, or, according to some authority, *in the interest of beneficiaries or to save them from some plight,* permit the trustee, to the extent necessary to such an end, to deal with the trust estate contrary to or in deviation from the express or literal terms of the trust instrument or declaration.' This citation continues with this statement:

'In this connection, the court is required to stand in the place of the creator of the trust and authorize what he would have authorized had he anticipated the exigencies rendering some change in his scheme necessary in order to prevent the loss of the subject of it.'

"In 54 American Jurisprudence at page 226, section 284, the writer makes this statement: 'The Court should not substitute its judgment for the judgment and wishes of the trustor, and any power of a court to authorize departures from the trust directions should be exercised no further, it has been held, than necessary for the preservation of the trust property.'

"The basis of this Court's action in allowing the trustees to sell the trust property and reinvest the proceeds in a more desirable property in a more desirable location is to preserve the trust property and estate for the benefit of the beneficiary.

"In a rather thorough Annotation on this subject in 168 A. L. R. at page 1019, the text writer makes this statement: 'With scarcely any real dissent the cases, whether of charitable or of private trusts, are to the effect that a court of equity has power, or "inherent power", to authorize a sale of property contrary to express or implied provisions or the patent general intent of the will or other trust instrument that the property shall not be sold. The statements commonly run to the effect that the power is one which exists in circumstances of

emergency or exigency, and especially in circumstances not anticipated or foreseen.'

"At page 1029 of the above mentioned Annotation, we find this statement:

'Passing notice may be taken of the fact that the proceeds of a sale of trust property sold in emergency stand in place of the property sold and are to be applied to the same general purposes . . . A Court may decline to authorize a sale for purposes of reinvestment in the absence of any sufficient showing as to the availability, character, and propriety of reinvestments contemplated.'

"This Court, prior to entering its Decree allowing a sale, made certain requirements of the trustees. These requirements, which have been met, were as follows:

1. The present property to be appraised by three qualified appraisers;

2. The sale of the present property to be for not less than the appraised value after all expenses paid;

3. Evidence that the Trust held fee title to the property at Ninth and Mulberry, the proposed new location of the Boys Club;

4. Detailed plans for the construction of the new building on the new site, including architect's drawings, said drawings to include two store rooms to be used for business purposes in accordance with settlor's wishes;

5. Bids to be accepted on the basis of the architect's drawings, with successful contractor posting a good and sufficient bond for his good performance of said contract:

6. Under no circumstance is the new building and property to be encumbered and the proceeds from the sale of the present property is to be sufficient to pay all indebtedness connected with the change of location into new building.

'Under these circumstances, considering Mr. Merrill's wishes as expressed in his trust instrument, considering the change of circumstances not foreseen by Mr. Merrill in 1889, considering the fact that he expressed a desire in his trust instrument to not only do good during his lifetime, but that 'the benefits may last when I am gone', considering all of these matters along with other relevant points, this Court feels that it would be abusing its powers if the request were not granted on the petition of the trustees in this friendly suit. Certainly, no Court should take the arbitrary view under the facts here that a Court of equity cannot act to relieve the situation and preserve the trust estate, in view of the overwhelming majority rule as set out in the above mentioned citations, among many others.

"This Court, in making its ruling herein, is cognizant of the case of *Atkinson* v. *Lyle,* 191 Ark. 61. The Atkinson case involved the Merrill trust, the same trust now before the Court. However, this Court is of the opinion that the Atkinson case is not controlling in the case presently before the Court for the reason that the facts of the Atkinson case are different from the facts of the present case. The Atkinson* case went to the Supreme Court from the Jefferson Chancery Court. In that case, the trustees of the Merrill Trust proposed to mortgage the building involved in this case, and sell some other property not involved in these proceedings. So, for the purpose of this case, the Atkinson case involved a mortgage of the trust property at Fifth and Main Streets in Pine Bluff, whereas the case at bar involves a sale of this property, with a reinvestment of the proceeds in a more desirable location and a more desirable building.

"On the basis of the facts before the Supreme Court in the Atkinson case, the Court had no alternative but hold as it did, because it can be readily seen that there is a vast difference between placing a mortgage on the

---

*Quoting the Trial Court's opinion as regards *Atkinson* v. *Lyle* is not an approval of that holding in *Atkinson* v. *Lyle.* Permissible deviation in charitable trust cases is now allowed, just as is being done in the case at bar.

property and selling the property under circumstances present in this case. To encumber the property with a Mortgage could certainly create a risk for the trust in that if the mortgage was not discharged, it could be foreclosed and thus the failure and destruction of the trust estate. However, on the basis of the facts before the Court, there is no possibility for the trust to fail or be destroyed. The trustees, under the supervision and control of this Court, have made fool-proof plans to see that Mr. Merrill's wishes are carried out, the only change being in the location of the property. And as to the change in location, this Court would observe that however evident it might be that the Settlor designed and expected that the lot at Fifth and Main Streets should be the seat of his charity, it is still more evident from the scope and tenor of the deed in trust that it was the charity itself, and not the perpetual use of the location at Fifth and Main Streets for the stated purpose, which the donor had mainly in mind. The testimony was more than substantial to indicate that a continuance of Mr. Merrill's charity at its present location would fail to secure the object manifestly intended by the donor in his trust instrument.

''So, the opinion in the Atkinson case is not binding and conclusive on this Court or any other court in the State of Arkansas because of the different facts involved. See *Beck* v. *State,* 14 S. W. 2d 1101, 179 Ark. 102. Also, the doctrine of *stare decisis* has no application where the subject matter in a subsequent suit is not identical with that in prior cases. *Kincade* v. *C. & L. Electric Co-operative,* 299 S. W. 2d 69, 227 Ark. 321.

''The real holding in the Atkinson case as far as this case is concerned, was that the attempt by the trustees to mortgage the trust property was void because in contravention of the settlor's express wishes. That portion of the Atkinson opinion that applied to sales of the trust property would be dicta in the case at bar because of the different facts involved. And as was stated in the case of *Campbell* v. *Beaver Bayou Drainage District,* 219 S. W. 2d 934, 215 Ark. 187, in following prece-

dents, Courts are guided by the real holding which is essential rather than by dicta which is incidental.

"For the reasons stated, the complaint will be dismissed and defendants' request to sell the trust property involved is granted."

We need add but little to the foregoing opinion. The Chancery Court correctly held that the main purpose of Mr. Merrill's trust indenture was to ". . . attract the young white people and bring them under influences calculated to elevate and improve them physically, mentally, morally, and spiritually", just as stated in the trust instrument. The other matters were specific details, or suggestions, or restrictions. The trust instrument executed in 1889 provided that the property at Fifth Avenue and Main Street could not be sold. But at that time the said location was outside the business district of Pine Bluff. In the transcript before us there is a picture of Main Street in Pine Bluff in 1890 which shows that Fifth Avenue and Main Street was then a timber covered area. Today that location is the hub of the metropolitan area of the City. To keep that specific property today for a youth center will be of danger to youth who might go there for lectures, physical development, etc.; whereas, youth will be greatly benefited by a new location of the Institute. As aforesaid, the prime purpose of the trust is to ". . . provide some place of instruction and amusement to attract the young white people and bring them under influences calculated to elevate and improve them physically, mentally, morally, and spiritually". With that as the main purpose of the trust, equity has the power to permit the trustees to deviate from the restriction against the sale of the property at Fifth Avenue and Main Street, when it is shown — as here — that the deviation is necessary to accomplish the main purpose of the trust. *Henshaw* v. *Flenniken*, 183 Tenn. 232, 191 S. W. 2d 541, 168 A. L. R. 1010; *Amory* v. *Attorney General*, 179 Mass. 89, 60 N. E. 391; *Catholic Bishop of Chicago* v. *Elliott*, 14 Ill. App. 2d 495, 144 N. E. 2d 874; *Town of S. Kingstown* v. *Wakefield*, 48 R. I. 27, 134 A. 815, 48 A. L. R. 1122; *Foust* v. *Wm. E. English Foundation*, 118

Ind. App. 484, 80 N. E. 2d 303; and *Shoemaker* v. *American Security & Trust Co.*, 163 Fed. 2d 585.

In *Slade* v. *Gammill,* 226 Ark. 244, 289 S. W. 2d 176, we allowed the trustees to make a disposition of a portion of the trust property on the doctrine of *cy pres.* That doctrine is not invoked in the case at bar because the change of location is not a change of purpose of the trust; but what we said in *Slade* v. *Gammill* is applicable here in that these trustees have made a ". . . very fine common sense solution of serious difficulties"; and ". . . equity should approve such a solution. . .". We affirm the decree of the Chancery Court.

GEORGE ROSE SMITH, J., concurring. I agree with the majority's reasoning and conclusion, but I would express somewhat more emphatically my disagreement with the decision in *Atkinson* v. *Lyle,* 191 Ark. 61, 85 S. W. 2d 715. Insofar as that case holds that a court of equity is without power to permit any deviation from the exact language of a charitable trust I think the decision to be erroneous, and I would overrule it outright.

The power of chancery to sanction a deviation is generally recognized in the case of private trusts as well as charitable trusts. Rest., Trusts, §§ 167 and 381. We have approved the doctrine with respect to private trusts, as in *Biscoe* v. *State,* 23 Ark. 592, where we said that if the compensation fixed by the declaration of trust was insufficient to attract competent trustees a court of equity could make an order for additional compensation.

The power is even more urgently needed in the field of charitable trusts, where the public interest demands that the trust be protected from destruction owing to some change in circumstances not foreseen by the settlor. We have often applied the *cy pres* doctrine, which permits the court to apply the property of a charitable trust to some similar objective when the settlor's original purpose fails. *McCarroll* v. *Grand Lodge,* 154 Ark. 376, 243 S. W. 870; *State ex rel. Atty. Gen.* v. *Van Buren School Dist. No. 42,* 191 Ark. 1096, 89 S. W. 2d 605. If we are willing to approve a principle that permits the fundamental purpose of the

trust to be changed, as the *cy pres* doctrine does, there is no sound reason for refusing to permit a deviation in mere administrative detail. We actually approved a deviation in the recent case of *Donaghey Foundation* v. *Little Rock University*, 231 Ark. 748, 332 S. W. 2d 497, and I think we should take the present opportunity to set all doubts at rest by specifically overruling the contrary doctrine that was announced in *Atkinson* v. *Lyle*.

HOLT and ROBINSON, JJ., join in this concurrence.